**Nos. 25-14507, 26-10674**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

United States of America,
*Plaintiff–Appellee,*
v.

Knight First Amendment Institute at Columbia University; American Oversight,
*Interested Parties–Appellants,*

Donald J. Trump; Waltine Nauta; Carlos de Oliveira,
*Defendants–Appellees.*

On appeal from the United States District Court for the
Southern District of Florida — No. 9:23-cr-80101-AMC
(Judge Aileen M. Cannon)

## SUPPLEMENTAL OPENING BRIEF OF APPELLANT KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY

David Buckner
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
(305) 964-8003

Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at
   Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Appellant Knight First
Amendment Institute at Columbia University*

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant Knight First Amendment Institute at Columbia University certifies that the following have an interest in the outcome of this appeal.

1. Abdo, Alex

2. America First Legal Foundation

3. American Oversight

4. Balkin, Jack

5. Buckner & Miles, P.A.

6. Buckner, David

7. Cannon, Hon. Aileen

8. Clanton, Crystal

9. Crossin, Robert

10. De Oliveira, Carlos

11. Delgado, Jorge

12. E & W Law

13. Epstein, Daniel

14. Fein, Ronald A.

15. Gelber Schachter & Greenberg, P.A.

16. Griffin, Kelsey

17. Haddix, Elizabeth

18. Irving, John

19. Jaffer, Jameel

20. Johnson, Ara

21. Kim, Noah

22. Kitrosser, Heidi

23. Klugh Jr., Richard

24. Knight First Amendment Institute at Columbia University

25. Koningisor, Christina

26. Lakier, Genevieve

27. Langford, John

28. Llanes, Barbara

29. Magarian, Greg

30. Media Freedom & Information Access Clinic, Abrams Institute, Yale Law School

31. Murrell Jr., Larry

32. Nauta, Waltine

33. Neuborne, Burt

34. O'Byrne, Haden

35. Percival, Emily

36. Porter, Michael

37. Procaccini, Francesca

38. Schachter, Adam

39. Schulz, David

40. Selbrede, Anna

41. Stark, Lorree

42. Siblesz, Alessandra M.

43. Smachetti, Emily

44. Trump, Donald

45. West, Sonja

46. Wharton, Kendra

47. Wilkens, Scott

The Knight First Amendment Institute at Columbia University further certifies that it has no parent corporation and that no publicly held corporation owns 10 percent or more of its stock.

/s/ Scott Wilkens
Scott Wilkens

**Statement Regarding Oral Argument**

The Knight Institute believes that oral argument would assist the Court's decisional process in this case of significant public importance. *See* 11th Cir. R. 28-1(b).

## Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ..................C1

Statement Regarding Oral Argument ........................................................................ i

Table of Authorities ................................................................................................ iv

Introduction.............................................................................................................. 1

Jurisdictional Statement ........................................................................................... 1

Statement of the Issues ............................................................................................ 1

Statement of the Case .............................................................................................. 2

    I.      Statement of the facts .................................................................... 2

    II.     Standard of review ........................................................................ 2

Summary of Argument ............................................................................................. 3

Argument ................................................................................................................. 5

    I.      The district court erred in denying the Second Intervention Motion. ....... 5

    II.     The district court lacked jurisdiction to permanently enjoin the release of Volume II, but this Court should reach the merits rather than remand. .................................................................................. 5

    III.    The district court's justifications for permanently suppressing Volume II lack merit. ................................................................. 7

          A.     The constitutionality of the Special Counsel's appointment is irrelevant. .................................................................... 7

          B.     The Protective Order provides no support for the Permanent Injunction. .................................................................... 9

          C.     The possibility that Volume II contains privileged or Rule 6(e) material does not justify wholesale suppression. ................... 11

ii

D.    The presumption of innocence does not support the
Permanent Injunction. ................................................................... 12

Conclusion ....................................................................................................... 13

Certificate of Compliance.................................................................................. 15

Certificate of Service ....................................................................................... 16

## Table of Authorities

**Cases**

*Bell v. Wolfish*, 441 U.S. 520 (1979) ........................................................ 12

*Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232 (11th Cir. 2024) ............................ 5

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) .................................................... 11

*Electronic Priv. Info. Ctr. v. U.S. Dep't of Just.,* 18 F.4th 712 (D.C. Cir. 2021) .................................................................... 12

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) ........................... 5, 6

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988) .............................. 7

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242  (D.C. Cir. 1977) ...................................................................... 11

*Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235 (11th Cir. 2008) ................................................................ 11

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ........................................... 8

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .................................... 8

*Scott v. Miami Dade Cnty.*, No. 25-10632, 2026 WL 33401 (11th Cir. Jan. 6, 2026) .......................................................................... 6

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ............................................... 12

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ................................. 8

*United States v. Comey*, 810 F.Supp.3d 768, 771 (E.D. Va. 2025) ......................... 8

*United States v. Cone*, 627 F.3d 1356 (11th Cir. 2010) ........................................ 2

*United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025) ........................................ 8

*United States v. Lee*, No. 23-11975, 2025 WL 1912444 (11th Cir. July 11, 2025) ................................................................................................ 7

*United States v. Tovar–Rico*, 61 F.3d 1529 (11th Cir. 1995) ................................... 5

**Statutes**

28 C.F.R. § 600.8 ............................................................................................. 4

5 U.S.C. § 552(b) ............................................................................................. 8

## Introduction

The Knight Institute's first appeal concerns its statutory right of access to Volume II under FOIA, which has been frustrated by the district court's Jan. 21, 2025 Injunction barring the Department of Justice from releasing Volume II. The first appeal also concerns the Institute's common law and First Amendment right of access to the district court's copy of Volume II.

While the first appeal was pending, the district court replaced the Jan. 21, 2025 Injunction with a permanent injunction, offering new justifications for Volume II's suppression. This second appeal concerns the permanent injunction and the right of access under FOIA, not the common law or constitutional right of access.

## Jurisdictional Statement

The district court denied the Knight Institute's second intervention motion on February 23, 2026, Dkt.780, and the Institute timely appealed on March 2, 2026, Dkt.783. This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

Whether the district court erred in denying the Knight Institute's second intervention motion seeking a stay of proceedings.

Whether the district court erred in granting Defendants–Appellees' motions seeking permanent suppression of Volume II.

1

**Statement of the Case**

## I.    Statement of the facts

In late January 2026, while the First Appeal was pending, Defendants–Appellees filed unopposed expedited motions in the district court seeking an order permanently enjoining the Department of Justice from releasing Volume II and requiring that all copies of the document be destroyed. Dkt.772, 774. The government informed the court that "it is the position of the Attorney General and this Department that . . . Volume II . . . belongs in the dustbin of history." Dkt.773 at 3. On February 9, 2026, to protect the pending appeal and the public's right of access, Appellants filed a second motion to intervene seeking a stay of proceedings ("Second Intervention Motion"), arguing that the district court lacked jurisdiction to adjudicate Defendants–Appellees' motions and that the motions lacked merit. Dkt.775. On February 23, the district court granted Defendants–Appellees' motions in part, permanently enjoining DOJ from releasing Volume II ("Permanent Injunction Order"). Dkt.779. The court also denied Appellants' Second Intervention Motion, Dkt.780, which they appealed on March 2, 2026. Dkt.783, 784 ("Second Appeal").

## II.    Standard of review

The issues presented are questions of law this Court reviews *de novo*. *See United States v. Cone*, 627 F.3d 1356, 1358 (11th Cir. 2010).

## Summary of Argument

The district court erred in denying Appellants' Second Intervention Motion and permanently enjoining the release of Volume II.

I. For the reasons stated in its opening brief, the Knight Institute has standing to intervene to challenge the Permanent Injunction, which is preventing the Institute from vindicating its right of access to Volume II under FOIA.

II. Under the *Griggs* divestiture rule, the district court lacked jurisdiction to adjudicate Defendants–Appellees' motions seeking permanent suppression of Volume II, because they were filed while the First Appeal was pending and concerned the central issue on appeal—public access to Volume II. Although the ordinary remedy for a violation of *Griggs* is vacatur, applying it here would undermine the interest in judicial economy the rule is meant to serve. To avoid that result, the Court should reach the merits of the Permanent Injunction Order, by declining to apply *Griggs* or by treating the order as an indicative ruling under Federal Rule of Appellate Procedure 12.1.

III. The district court's four rationales for permanently suppressing Volume II are without merit. First, the constitutionality of the Special Counsel's appointment is irrelevant to the Knight Institute's FOIA rights. Volume II is a DOJ record subject to FOIA's disclosure mandate; none of FOIA's nine exclusive exemptions has any connection to the Appointments Clause; and the Dismissal Order's remedy for the

Appointments Clause violation was expressly limited to the indictment's dismissal. Second, the Protective Order has no bearing on Volume II. It is directed solely at Defendants and their use of materials produced to them in discovery. It imposed no restrictions on the government, let alone on the government's use of material already in its possession. Nor can Volume II properly be characterized as "discovery material." It was compiled pursuant to the Special Counsel's independent reporting obligation under 28 C.F.R. § 600.8, not produced to Defendants in discovery. That the report and the discovery production share a common source—the Special Counsel's investigative files—does not transform the report into discovery material. Third, the possibility that Volume II contains privileged or Rule 6(e) material cannot justify wholesale suppression. Consistent with DOJ's treatment of every other special counsel report and with FOIA's segregability requirement, the presence of such material in Volume II would at most warrant discrete redactions. Finally, the presumption of innocence is a trial right that allocates the burden of proof, not a freestanding bar to the public release of government records. Courts routinely unseal indictments, search warrant affidavits, and other case materials without violating the presumption, and Volume I of the Smith Report was publicly released even though all charges against President Trump were dismissed without any adjudication of guilt.

**Argument**

## I.    The district court erred in denying the Second Intervention Motion.

For the reasons set forth in its opening brief, the Knight Institute has standing to intervene to challenge the Permanent Injunction, which replaced the Jan. 21, 2025 Injunction at issue in the First Appeal and is preventing the Institute from vindicating its statutory right of access to Volume II under FOIA. The district court's justifications for the two injunctions differ, but the injury to the Institute's FOIA rights is the same.

## II.    The district court lacked jurisdiction to permanently enjoin the release of Volume II, but this Court should reach the merits rather than remand.

The Supreme Court has explained that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The purpose of the *Griggs* rule is "to avoid the confusion and waste of time that would result from dual jurisdiction." *United States v. Tovar–Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995). "Until this Court decides an appeal and issues the mandate, the district court lacks jurisdiction to rule in the case except on collateral issues or in aid of the appeal." *Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232, 1238 (11th Cir. 2024).

Under *Griggs*, the district court lacked jurisdiction to adjudicate Defendants–Appellees' motions seeking the permanent suppression of Volume II, which were filed while the First Appeal was pending and concerned the central issue on appeal—public access to Volume II. The district court asserted that *Griggs* did not apply because the Permanent Injunction Order merely "enforce[d] the Court's Dismissal Order entered in July 2024 and the Court's Protective Order entered in June 2023," but this is incorrect. Dkt.779 at 7–8 n.4. As explained below, neither the Dismissal Order nor the Protective Order provides support for the Permanent Injunction Order. *See infra* Part III(A) & (B). In any event, the *Griggs* rule applies to "those aspects of the case involved in the appeal"—here, public access to Volume II—regardless of whether those aspects can be tied to other district court orders. *Griggs*, 459 U.S. at 58.

The remedy for a *Griggs* violation is ordinarily to vacate the offending district court order, *see Scott v. Miami Dade Cnty.*, No. 25-10632, 2026 WL 33401, at *1 (11th Cir. Jan. 6, 2026), but doing so here would frustrate the interest in judicial economy the rule is meant to serve. A ruling in the Knight Institute's favor in the First Appeal may leave the district court free on remand to reissue the Permanent Injunction, necessitating yet a further appeal and prolonging the suppression of a document of significant public importance. Courts have recognized that as a "judge-made, rather than a statutory, creation that is founded on prudential considerations,"

6

the *Griggs* rule "should not be applied when to do so would defeat its purpose of achieving judicial economy." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988). Accordingly, the Court should reach the merits of the Permanent Injunction Order instead of simply vacating it.[1]

### III.    The district court's justifications for permanently suppressing Volume II lack merit.

#### A.    The constitutionality of the Special Counsel's appointment is irrelevant.

The court's first justification was that the "[r]elease of Volume II outside [DOJ] would plainly offend the Court's Dismissal Order," which concluded that the Special Counsel "acted without lawful appointment or funding authority in this proceeding and that his actions taken in connection therewith are therefore invalid." Dkt.779 at 9. The district court accused the Special Counsel of engaging a "brazen stratagem" to "circumvent" the Dismissal Order "by taking the discovery generated in this case and compiling it in a final report for transmission to then-Attorney General Garland, to Congress, and then beyond." *Id.* at 11.

This rationale is meritless: the constitutionality of the Special Counsel's appointment has no bearing on the Institute's statutory right of access under FOIA.

---

[1] Alternatively, the Court could treat the order as an indicative ruling under Federal Rule of Appellate Procedure 12.1, retain jurisdiction but remand on a limited basis with directions to enter the Permanent Injunction Order as a final ruling. *See United States v. Lee*, No. 23-11975, 2025 WL 1912444, at *2 (11th Cir. July 11, 2025).

Volume II is subject to FOIA as a record the Department of Justice both "create[d] or obtain[ed]" and "control[led] . . . at the time the FOIA request [was] made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989). FOIA requires disclosure unless a record falls within one of nine exemptions, which are "explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citations omitted). None relates to the Appointments Clause, *see* 5 U.S.C. § 552(b)(1)–(9), and the Institute knows of no case holding that a record otherwise subject to FOIA is exempt because an unconstitutionally appointed official created it.

Moreover, a judge-made carve-out shielding documents prepared by unconstitutionally appointed officials would contradict FOIA's "basic purpose" of "ensur[ing] an informed citizenry . . . to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Recent decisions invalidating the appointments of Alina Habba as Acting U.S. Attorney for the District of New Jersey, *United States v. Giraud*, 160 F.4th 390, 397–402 (3d Cir. 2025), and Lindsay Halligan as Interim U.S. Attorney for the Eastern District of Virginia, *United States v. Comey*, 810 F.Supp.3d 768, 771 (E.D. Va. 2025), illustrate the point: under Judge Cannon's reasoning, no document those offices produced while Habba and Halligan were in charge would be subject to FOIA. That cannot be the law.

The rationale also rests on a false premise—that preparing the report breached the Dismissal Order. The court relied on that order's statement that "the actions of Special Counsel Smith in connection with this proceeding must be set aside." Dkt.779 at 10–11. That statement, however, referred to the criminal prosecution itself, not the Special Counsel's preparation of a final report pursuant to DOJ regulations. Indeed, the Dismissal Order's remedy was limited to dismissal of the superseding indictment. Dkt.672 at 93. Nothing in the order barred preparing Volume II—as the court effectively conceded by calling it a "breach of the *spirit* of the Dismissal Order." Dkt.779 at 11 (emphasis added).

## B.    The Protective Order provides no support for the Permanent Injunction.

The district court also deemed the Permanent Injunction necessary to "enforce" its Rule 16(d) Protective Order, reasoning that allowing disclosure of Volume II would "permit public release of discovery materials without consent of the United States or approval of the Court, and with no meaningful ability of the former defendants to respond with the discovery itself." Dkt.779 at 12. This justification fails for several reasons.

First, the Protective Order did not restrict the Special Counsel's use of the investigative files his office produced to Defendants in discovery. The P.O. is directed solely at "Defendants and Defendants Counsel"—not the government—and restricts only *their* use of "Discovery Materials"—defined as information "produced

9

by the United States to the Defendants in preparation for, or in connection with, any stage of this case," Dkt.27 at 1. While "[t]he parties operated under the tight rubric of th[e] Protective Order during this hotly contested litigation," Dkt.779 at 11–12, that "tight rubric" applied, under the plain text of the Order, only to Defendants. Dkt.27 at 6. Furthermore, none of the district court's "painstaking[] rul[ings] on matters governing disclosure of discovery in pre-trial motions," Dkt.779 at 12, interpreted the P.O. to restrict the *government's* disclosure of anything, let alone of materials already in its possession.

Second, Volume II cannot properly be characterized as "discovery material." The P.O. defines "Discovery Materials" as information "produced by the United States to the Defendants in preparation for, or in connection with, any stage of this case." Dkt.27 at 1. Volume II was not produced to Defendants in connection with this case. It was compiled by the Special Counsel pursuant to his independent obligation to report to the Attorney General under 28 C.F.R. § 600.8, which is wholly separate from the discovery process. That the discovery materials in this case and Volume II share a common source—the Special Counsel's investigative files—does not transform Volume II into "discovery material."

Finally, if Defendants–Appellees need access to discovery materials, DOJ presumably can provide it, and the P.O. allows Defendants–Appellees to disclose discovery with the government's or the court's consent. Dkt.27 at 3.

**C.    The possibility that Volume II contains privileged or Rule 6(e) material does not justify wholesale suppression.**

The district court also reasoned that Volume II's disclosure would risk releasing privileged or Rule 6(e) material that, it believed, could no longer be reliably screened because Defendants were required to delete their copies of discovery and the Special Counsel's team had departed. Dkt.779 at 12. That rationale, too, is without merit.

Under FOIA, the presence of Rule 6(e) material or attorney-client privileged information in Volume II would at most warrant discrete redactions. FOIA Exemption 3 covers Rule 6(e) material, *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1100–01 (D.C. Cir. 2014), and Exemption 5 covers material protected by the attorney-client privilege, *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1257 (11th Cir. 2008). Because FOIA's "focus . . . is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The agency must instead disclose all portions of the document that are "reasonably segregable" from the exempt portions. *Miccosukee Tribe*, 516 F.3d at 1257 (citing 5 U.S.C. § 552(b)).

Nor do the asserted practical difficulties justify withholding Volume II. Courts routinely adjudicate privilege and grand-jury-secrecy claims and review proposed

11

redactions; this case is not out of the ordinary. And while the Special Counsel's departure may make DOJ's review of Volume II for privileged or Rule 6(e) material more labor-intensive, that cannot justify denying access to Volume II under FOIA.

The district court's reasoning also defies historical practice. *Every* final Special Counsel report *except for* Volume II has been released in full or with targeted redactions. Only the Mueller Report had substantial redactions, which were later challenged in FOIA litigation and overruled in part. *Electronic Priv. Info. Ctr. v. U.S. Dep't of Just.,* 18 F.4th 712, 715 (D.C. Cir. 2021).

**D.    The presumption of innocence does not support the Permanent Injunction.**

The district court's final justification was that allowing DOJ to release Volume II would violate the "presumption of innocence held sacrosanct in our constitutional order, . . . because any defendant whose charges are dismissed need not be subjected, over objection, to prosecutorial disclosure of widescale discovery materials absent a lawful directive counseling release." Dkt.779 at 13. That is incorrect. The presumption of innocence is a trial right, not a freestanding shield against disclosure of government records: it "is a doctrine that allocates the burden of proof in criminal trials," *Bell v. Wolfish*, 441 U.S. 520, 533 (1979), ensuring the factfinder does not convict absent proof beyond a reasonable doubt, *see Taylor v. Kentucky*, 436 U.S. 478, 485–86 (1978). Courts routinely unseal indictments, warrant affidavits, and similar material harmful to the reputations of unconvicted

12

persons—as happened here—without any suggestion the presumption bars disclosure. Furthermore, FOIA stands as "a lawful directive counseling release" and none of its exemptions references the presumption of innocence as grounds for withholding agency records.

The district court's rationale is also based on a false premise—that no special counsel "has released a report after initiating criminal charges that did not result in a finding of guilt," at least where "the defendants contested the charges from the outset and still proclaim their innocence." Dkt.779 at 13. The release of Volume I of Special Counsel Smith's report—covering the election interference case—refutes that: it was published even though all charges against Trump were dismissed without any adjudication of guilt, and even though he continues to proclaim his innocence. The Mueller and Hur reports reflect the same settled understanding—that releasing a report does not offend the presumption of innocence of those investigated but not convicted. Those reports contained potentially damaging information about Trump and Biden, neither of whom had even been charged in connection with those investigations.

## Conclusion

For these reasons, this Court should reverse the district court's denial of the Second Intervention Motion and reverse the Permanent Injunction Order.

June 11, 2026                                    Respectfully submitted,

David Buckner
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
(305) 964-8003

/s/ Scott Wilkens
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at
   Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Appellant Knight First
   Amendment Institute at Columbia
   University*

14

## Certificate of Compliance

This brief complies with the Court's May 28, 2026 Order (No. 25-14507, ECF No. 68), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,000 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

Dated: June 11, 2026                         */s/ Scott Wilkens*
                                             Scott Wilkens

**Certificate of Service**

I hereby certify that on June 11, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: June 11, 2026                              */s/ Scott Wilkens*
                                                 Scott Wilkens