**No. 25-14507; 26-10674**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

United States of America,

*Plaintiff-Appellee*,

v.

Knight First Amendment Institute at Columbia University*,* American Oversight,

*Interested Parties-Appellants*

Donald J. Trump; Waltine Nauta; Carlos de Oliveira,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Florida

No. 9:23-cr-80101-AMC

---

**SUPPLEMENTAL OPENING BRIEF OF APPELLANT AMERICAN
OVERSIGHT**

---

Loree Stark
Daniel Martinez
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
danny.martinez@americanoversight.org

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant American Oversight*

## Certificate of Interested Persons and
## Corporate Disclosure Statement

Pursuant to Eleventh Circuit Rule 26.1-1, counsel of record for American Oversight certifies that the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1. American Oversight, Appellant/Prospective Intervenor

2. Blanche, Todd, counsel for former Defendant and amicus curiae President Donald J. Trump

3. Bove, Hon. Emil, counsel for former Defendant and amicus curiae President Donald J. Trump

4. Cannon, Hon. Aileen, Judge of the United States District Court, Southern District of Florida

5. Buckner, David M., counsel for Prospective Intervenor Knight Institute

6. De Oliveira, Carlos, former Defendant

7. Diakun, Anna, counsel for Prospective Intervenor Knight Institute

8. Delgado, Jorge, counsel for the United States of America

C-1 of C-3

9.      Haddix, Elizabeth, counsel for Appellant/Prospective Intervenor American Oversight in the below proceedings

10.     Irving, IV, John S., counsel for Defendant De Oliveira

11.     Jaffer, Jameel, counsel for Prospective Intervenor Knight Institute

12.     Klugh, Richard C., counsel for Defendant Waltine Nauta

13.     Knight First Amendment Institute, Prospective Intervenor

14.     Llanes, Barbara, counsel for Appellant/Prospective Intervenor American Oversight

15.     Martinez, Daniel, counsel for Appellant/Prospective Intervenor American Oversight

16.     Murrell, Jr., Larry Donald, counsel for former Defendant De Oliveira

17.     Nauta, Waltine, former Defendant

18.     Porter, Michael D., counsel for the United States of America

19.     Reboso, Manolo, counsel for the United States of America

20.     Schachter, Adam, counsel for Appellant/Prospective Intervenor American Oversight in the below proceedings

21.     Smachetti, Emily, counsel for the United States of America

22. Stark, Loree, counsel for Appellant/Prospective Intervenor American Oversight

23. Trump, President Donald J., former Defendant/amicus curiae

24. United States Department of Justice

25. Wharton, Kendra, counsel for Defendant and amicus curiae President Donald J. Trump

26. Wilkens, Scott, counsel for Prospective Intervenor Knight Institute

27. Wilson, Jenny, counsel for former Defendant Waltine Nauta

/s/ Daniel Martinez
Daniel Martinez
Loree Stark
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
danny.martinez@americanoversight.org

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant American Oversight*

## Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Table of Citations ................................................................................... iii

Supplemental Statement of the Issues........................................................1

Supplemental Statement of the Case...........................................................1

       A.      Proceedings Following Submission of Opening Brief...............1

       B.      Supplemental Statement or Scope of Review ...........................2

Supplemental Summary of the Argument.................................................2

Argument......................................................................................................3

    I.     The District Court Erred in Denying the Second Intervention Motion and Reversal is Necessary for American Oversight to Vindicate Its Rights. ...................................................................................3

       A.      The District Court's Boilerplate Statement that It Gave "Full Consideration" to Appellants' Second Intervention Motion Is Inadequate, Requiring Reversal...................................................3

       B.      The District Court Erred in Not Staying the Proceedings Pending Resolution of Appellants' Appeal. ..............................4

       C.      Reversing the Denial of the Second Motion for Intervention Is Necessary to Allow Appellants to Fully Participate in the Proceedings Below. ...............................................................5

    II.    The District Court Erred in Entering the Permanent Injunction...........5

       A.      The District Court Had No Jurisdiction to Permanently Restrict Volume II Because No Live Controversy Exists. ......................6

          1.     No Live Controversy Has Existed Since February 2025 Because All Appeals Had Been Dismissed......................6

i

2.    No Live Controversy Exists Because There Is No Adversity Between the Parties. ........................................7

B.    The Court Erred When It Failed to Justify a Permanent Injunction........................................................................8

1.    Volume II Is Not "Discovery Material" Subject to the Protective Order. ...........................................................8

2.    Even If Volume II Is Considered "Discovery Material," It Comports with the Protective Order. ..............................9

3.    FOIA's Exemptions Protect Material Covered Under Rule 6(e) and the Attorney Client Privilege...................10

4.    The District Court's Reliance on "Basic Fairness" to Prevent Dissemination of a Public Record Is Misplaced. ...............................................................................11

Conclusion...................................................................................12

Certificate of Compliance ...........................................................14

ii

## Table of Citations

**Page(s)**

**Cases**

*Baker v. Carr,*
  369 U.S. 186 (1962) ................................................................7

*Chi. & Grand Trunk Ry. Co. v. Wellman,*
  143 U.S. 339 (1892) ................................................................6

*Coinbase, Inc. v. Bielski,*
  599 U.S. 736 (2023) ................................................................5

*Flast v. Cohen,*
  392 U.S 83 (1968) ................................................................7

*Griggs v. Provident Consumer Disc. Co.,*
  459 U.S. 56 (1982) ................................................................5

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.,*
  445 U.S. 375 (1980) ................................................................7

*Miller v. Fenton,*
  474 U.S. 104 (1985) ................................................................2

*Moore v. Charlotte-Mecklenburg Bd. of Ed.,*
  402 U.S. 47 (1971) ................................................................7

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ................................................................9

*Trichell v. Midland Credit Mgmt., Inc.,*
  964 F.3d 990 (11th Cir. 2020) ................................................................6

*U.S. v. Shamsid-Deen,*
  61 F.4th 935 (11th Cir. 2023) ................................................................2, 4

*U.S. v. Trump,*
  No. 24-12311 (11th Cir. Nov. 25, 2024) ................................................................6

iii

**Statutes**

5 U.S.C. § 552 ..................................................................................4, 10, 11

18 U.S.C. App'x tit. III...............................................................................10

U.S. Const. art. II, § 3................................................................................9

U.S. Const. art. III, §§ 1–2 ........................................................................6

**Rules**

Federal Rule of Criminal Procedure 6(e) ..........................................10, 11

Eleventh Circuit Rule 26.1-1 ...................................................................C-1

Fed. R. App. P. 21(d)(1)............................................................................14

Fed. R. App. P. 32 .....................................................................................14

**Regulations**

28 C.F.R. § 600.9(c)..................................................................................12

28 C.F.R § 600.8(c)...................................................................................11

**Other Authorities**

Appellants' Joint Motion to Consolidate Appeals and Modify Briefing Schedule, No. 25-14507 (11th Cir. Mar. 5, 2026) ................................................2

Appellants' Joint Motion to Consolidate Appeals and Modify Briefing Schedule, No. 26-10674 (11th Cir. Mar. 5, 2026) ................................................2

Order, No. 25-14507 (11th Cir. May 28, 2026) ........................................2

Order, No. 26-10674 (11th Cir. May 28, 2026) ........................................2

Pet. Writ. Mandamus, No. 26-10503 (11th Cir. Feb. 13, 2026)...............1

## Supplemental Statement of the Issues

Whether the district court erred in denying American Oversight's and the Knight Institute's (collectively Appellants) joint motion to intervene in the proceedings below seeking a stay of the proceedings, pending resolution of the appeal of their first motions to intervene; and whether the district court erred in permanently enjoining release of a public record of significant public import.

## Supplemental Statement of the Case

### A.    Proceedings Following Submission of Opening Brief

Following the motions by former Defendants-Appellees to permanently prohibit release of Volume II of the Special Counsel's Report ("Volume II")—and in the case of former Defendants-Appellees Waltine Nauta and Carlos De Oliveira, to order destruction of all copies of the report—Appellants filed a joint expedited motion to intervene ("Second Intervention Motion") to stay proceedings pending resolution of the appeal of the denials of their respective first motions to intervene ("First Intervention Motions"). Doc. 775. Separately, Appellants filed a petition for writ of mandamus with this Court, seeking to stay the district court proceedings pending the appeal. *See* Pet. Writ. Mandamus, Case No. 26-10503 (11th Cir. Feb. 13, 2026), ECF No. 1-2.

On February 23, 2026, the district court entered two orders. The first permanently enjoined release of Volume II, Doc. 779, and the second denied Appellants' Second Intervention Motion, without addressing the legal arguments

1

raised by Appellants, Doc. 780. Appellants promptly appealed that denial. Docs. 783, 784.

Appellants jointly moved to consolidate the appeals and requested a modified briefing schedule to address issues arising from the second appeal. *See* ECF No. 55 (Case No. 25-14507); ECF No. 4 (Case No. 26-10674). The Court granted the motion to consolidate, *see* ECF No. 68 (Case No. 25-14507); ECF No. 38 (Case No. 26-10674), and ordered Appellants to file supplemental briefs by June 11, 2026.

## B.    Supplemental Statement or Scope of Review

A court of appeals reviews issue of law, including those that apply law to fact, de novo. *See U.S. v. Shamsid-Deen*, 61 F.4th 935, 944 (11th Cir. 2023). De novo review permits the appellate court to exercise its "primary function as expositor of law," and to decide the issue as if the appellate court were in the same position as the district court. *Id.* (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)).

## Supplemental Summary of the Argument

First, the district court erred when it failed to properly consider Appellants' Second Intervention Motion. American Oversight sought intervention a second time in the below proceedings jointly with Appellant Knight Institute to seek a stay so that it could fully participate in the proceedings as to Volume II and vindicate its statutory rights under FOIA. The district court provided no reasoning for denying the Second Intervention Motion, and it failed to stay the proceedings, necessarily

2

foreclosing Appellants from challenging the destruction or the permanent enjoinment of the release of Volume II.

Second, the district court erroneously ordered permanent restriction on release of Volume II. The district court misconstrued the scope of the Rule 16 protective order—which restricted only defendants, not the United States—and erred when it used its power to enforce orders governing discovery materials as a basis to permanently enjoin the release of a report created by the Special Counsel. Moreover, the district court failed to acknowledge safeguards already in place at the Department of Justice, and through FOIA itself, to protect against disclosure of material related to grand jury secrecy or the attorney-client privilege. Finally, the district court's reliance on a concept of "basic fairness" is misplaced, and its supervisory powers do not extend beyond protecting defendants' due process rights prior to trial.  This Court should reverse the denial of the Second Intervention Motion and the order permanently enjoining release of Volume II.

### Argument

**I.    The District Court Erred in Denying the Second Intervention Motion and Reversal is Necessary for American Oversight to Vindicate Its Rights.**

**A.    The District Court's Boilerplate Statement that It Gave "Full Consideration" to Appellants' Second Intervention Motion Is Inadequate, Requiring Reversal.**

The district court erred when it denied the Second Intervention Motion. American Oversight has a clear statutory right under the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552, to access the non-exempt portions of Volume II, *see* Opening Brief, ECF No. 39, and, had the court permitted Appellants to intervene and stayed the proceedings, American Oversight would have had the opportunity to which it is legally entitled to vindicate its statutory rights.

The district court's order provided no reasoning for the denial, simply stating that it gave "full consideration" to Appellants' arguments, even though the arguments for intervention were distinct from those in the First Intervention Motions. For example, Appellants argued that the appeal of the denial of the First Intervention Motions divested the district court of jurisdiction to take *any* action related to Volume II, Doc. 775 at 5–7, and that the constitutionality of the Special Counsel's appointment had no bearing on the public right of access to Volume II. The district court did not even cursorily engage with Appellants' arguments. Even under the more lenient abuse of discretion standard—which does not apply here, *see Shamsid-Deen*, 61 F.4th at 944—the district court erred by not providing any reasoning for the denial.

### B. The District Court Erred in Not Staying the Proceedings Pending Resolution of Appellants' Appeal.

A notice of appeal confers jurisdiction on the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (*per curiam*)). Appellants' First

4

Intervention Motions explicitly stated that intervention was for the purpose of lifting the restriction on Volume II. Docs. 717 & 721. Accordingly, Defendants-Appellees' motions to permanently enjoin access to the report were inextricably related to "aspects of the case involved in the appeal" of the denial of the First Intervention Motions. *Coinbase*, 599 U.S. at 740. The district court's failure to stay proceedings pending that appeal therefore violated the *Griggs* principle. This Court should correct that error by reversing the denial of the Second Intervention Motion.

### C. Reversing the Denial of the Second Motion for Intervention Is Necessary to Allow Appellants to Fully Participate in the Proceedings Below.

Finally, reversal of the Second Intervention Motion is necessary to enable Appellants to fully seek the relief to which they are entitled. While Appellants' First Intervention Motions addressed only the temporary restriction on Volume II, the Second Intervention Motion also addressed why a stay pending resolution was appropriate. (*See infra* section I.B). Moreover, after the Second Intervention Motion was filed, the Court imposed a new, permanent restriction on the release of Volume II, introducing an entirely new issue that American Oversight has a right—but has not had an opportunity—to address.

## II. The District Court Erred in Entering the Permanent Injunction.

The district court erred in granting Defendants-Appellees' motions to permanently restrict release of Volume II for two reasons. First, because there was

no live criminal case—all that remained were Appellants' First and Second Intervention Motions—the district court had no jurisdiction to grant this sweeping relief. Second, no good cause exists to justify a permanent injunction.

### A. The District Court Had No Jurisdiction to Permanently Restrict Volume II Because No Live Controversy Exists.

#### 1. No Live Controversy Has Existed Since February 2025 Because All Appeals Had Been Dismissed.

Article III restricts the courts to resolving "Cases" or "Controversies." U.S. CONST. art. III, §§ 1–2. Courts, as a result, "may exercise their power only for 'the determination of real, earnest, and vital controversy between individuals.'" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Chi. & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892)).

Here, no live criminal case has existed against any of the former Defendants-Appellees since January 2025, when the United States voluntarily dismissed its appeals against former defendants Nauta and De Oliveira. *U.S. v. Trump*, Case No. 24-12311 (11th Cir. Nov. 25, 2024), ECF No. 111; *see also id.* ECF No. 113–2 (granting dismissals). Because federal courts' supervisory and inherent powers only extend so far as Article III allows, the district court had no jurisdiction to enter the permanent injunction, and the temporary injunction should have expired following the dismissal of all appeals against former defendants.

6

### 2.    No Live Controversy Exists Because There Is No Adversity Between the Parties.

Adversity between parties is also a core Article III requirement. Its purpose is to "limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S 83, 95 (1968). Adversity "sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). As a result, "there is no [Article III] case or controversy when the parties desire 'precisely the same result.'" *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 383 (1980) (quoting *Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 48 (1971) (*per curiam*)).

Here, Defendants-Appellees and the United States all desired the same result: a permanent restriction on access to Volume II. *See* Docs. 772 & 774. The United States consented to the relief requested in Defendants-Appellees' motions to restrict release of the report and agreed that "Volume II should not be released outside of the Department of Justice." Doc. 773 at 1. Without *any* Article III analysis, the district court "agree[d] with the parties' **uniform** view" that the report should be permanently restricted. Doc. 779 at 10 (emphasis added).

Without party status in the district court, Appellants have been unable to participate in opposing the motions by former Defendants-Appellees,

7

notwithstanding their statutory, common law, and constitutional rights. This, in turn, has complicated the appellate process by necessitating multiple appeals to protect Appellants' rights while the district court proceeded to rule on motions implicating their rights without the benefit of their input. Because it did not have jurisdiction, the district court erred in entering a permanent injunction.

### B. The Court Erred When It Failed to Justify a Permanent Injunction.

#### 1. Volume II Is Not "Discovery Material" Subject to the Protective Order.

Contrary to the district court's finding, Volume II is not "discovery material" under the district court's Rule 16 protective order. Critically, the district court overlooked a crucial aspect of the protective order: it largely operates against *Defendants*, not the *United States*. "Discovery Materials" are defined as "[a]ll non-classified discovery produced by the United States to the Defendants in preparation for, or in connection with, any stage of this case . . . and may be used by the Defendants and Defense Counsel . . . solely in connection with the defense of this case . . . " Doc. 27 at ¶ 1. No part of that definition constrains the United States from using "non-classified discovery" in the manner that it sees fit. For good reason: the evidence and investigative records gathered by the United States are both quintessential agency records and "fall[] within the discretion of the Executive Branch," which must decide "how to prioritize and how aggressively to pursue legal

actions against defendants who violate the law. . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021); *see* U.S. CONST. art. II, § 3 (Take Care Clause).

Accordingly, Volume II contained no discovery material as defined by the Protective Order, which cannot reasonably be understood to constrain the United States.

### 2. Even If Volume II Is Considered "Discovery Material," It Comports with the Protective Order.

Assuming for the sake of argument that Volume II is considered "discovery material," its preparation did not violate the protective order for the same reason as above: the Protective Order was meant to restrain Defendants and Defendants' counsel, not the United States.

A plain reading of the Protective Order supports this conclusion. In the section titled "No Disclosure to the Public," the Protective Order states that "Discovery Materials, along with any information derived therefrom, shall not be disclosed . . . without prior notice to and consent of the United States or approval of the Court." Doc. 27 at ¶ 6. In a previous section, the Protective Order restricts Defendants, their counsel, and other authorized individuals from sharing the contents with anyone outside of their employ, besides potential witnesses and their counsel. Doc. 27 at ¶ 3. And the Protective Order itself only contemplates violations against Defendants, their counsel, and authorized individuals—not the United States. Doc. at ¶ 9.

### 3.    FOIA's Exemptions Protect Material Covered Under Rule 6(e) and the Attorney Client Privilege.

The district court further erred in permanently enjoining release of Volume II by relying in part on the risk of "disseminating material protected by the attorney-client privilege or material covered by [Federal Rule of Criminal Procedure] 6(e)," Doc. 779 at 12, when there are already existing protections in place that would prohibit the government from sharing that material.

No risks exist for the disclosure of grand jury material, which are protected by FOIA Exemption 3. Specifically, FOIA does not apply to records "exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), including those covered by Rule 6(e), *see* 18 U.S.C. App'x tit. III. The district court's concern is thus misplaced.

Nor is there any risk of disclosure of attorney-client privileged material. While the district court did not explain at length the basis for its statements that disclosure would "impinge upon colorable and uncontested claims of privilege," Doc. 779 at 13, President Trump argued that Volume II was derived from attorney-client communications such that the "disclosure of such sensitive materials without court approval would cause irreparable harm." Doc. 772 at 16. But the district court failed to appreciate the many steps before disclosure to the public that would take place: For example, the Department of Justice could conduct its own review, with participation of counsel for Defendants-Appellees. And in response to a valid FOIA request for Volume II, the Department of Justice could lawfully withhold portions

10

that were exempt or excluded under the statute. *See* 5 U.S.C. § 552(b) (requiring release of "[a]ny reasonably segregable portion" of responsive records). A dissatisfied requestor could seek relief from a district court, which has the authority to rule on relevant legal issues. *See* 5 U.S.C. § 552(a)(4)(B) (establishing district court jurisdiction over FOIA disputes). For these reasons, the district court's prohibition of release because of the "real risk" of dissemination of materials protected by Rule 6(e) or the attorney-client privilege is without merit. Doc. 779 at 12.

### 4.    The District Court's Reliance on "Basic Fairness" to Prevent Dissemination of a Public Record Is Misplaced.

The district court's final basis to prevent disclosure—that a "manifest injustice" would occur because the Special Counsel acted "without lawful authority" for charges that resulted in dismissal, Doc. 779 at 13—fails for two reasons.

First, dismissal of the charges is irrelevant: the special counsel regulations require a report regardless of the result of the prosecution. *See* 28 C.F.R § 600.8(c) ("At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel."). The district court misreads the regulation, ascribing to the Special Counsel the authority to release the report outside of the department, when that authority lies with the Attorney General. *Contrast* Doc. 779 at 13 ("The Court strains to find a situation in which a former special counsel

11

has released a report . . .") ("[I]t is certainly not customary for a prosecutor . . . . to publicly disseminate large swaths of discovery. . .") *with* 28 C.F.R. § 600.9(c) ("The Attorney General may determine that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions.").

Second, to the extent the district court relies on "basic fairness," Doc. 779 at 14, the district court's supervisory powers extend no further than protecting former Defendants-Appellees' due process rights in the face of an impending trial. The proceedings ultimately resulted in dismissal. As a result, no justification exists to support a permanent restriction on the release of Volume II because of "basic fairness."

## Conclusion

For the foregoing reasons, American Oversight respectfully requests that this Court reverse the district court's decisions denying American Oversight's First Intervention Motion and the Second Intervention Motion, and to reverse the permanent restriction of release on Volume II.

*/s/ Daniel Martinez*
Daniel Martinez
Loree Stark
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114

danny.martinez@americanoversight.org

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant*
*American Oversight*

## Certificate of Compliance

I certify that this petition complies with the Court's May 28, 2026 Order (No 25-14507, ECF No. 68), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,770 words. The petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/  Daniel Martinez
Daniel Martinez
Loree Stark
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
danny.martinez@americanoversight.org


Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant American Oversight*

14