IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NOs. **25-14507-AA, 26-10674-AA**

United States of America,

Plaintiff-Appellee,

- versus -

Knight First Amendment Institute at Columbia University,
American Oversight,

Interested Parties-Appellants,

Donald J. Trump,
Waltine Nauta,
Carlos de Oliveira,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

## CONSOLIDATED BRIEF FOR THE UNITED STATES

Jason A. Reding Quiñones
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132
(305) 961-9062

George E. Doty III
Chief, Appellate Division

Jorge R. Delgado
Assistant United States Attorney

Of Counsel

## Statement Regarding Oral Argument

The United States of America respectfully suggests that the briefs and record adequately present the facts and legal arguments and that oral argument would not significantly aid the decisional process.

## Table of Contents

**Page:**

Statement Regarding Oral Argument ...........................................................i

Table of Contents ..............................................................................ii

Table of Citations ..............................................................................v

Statement of Jurisdiction ................................................................. xv

Statement of the Issues .......................................................................3

Statement of the Case:

    1.    Course of Proceedings and Disposition in the Court Below ......4

    2.    Statement of the Facts ...........................................................7

        a.  Nauta and de Oliveira's Emergency Motion to Preclude

            Release of the Special Counsel's Report .............................7

        b.  The District Court's Deferred Ruling ...................................8

        c.  The Hearing on the Emergency Motion as to Volume II.......9

        d.  The January 21 Order Precluding Release of Volume II.....10

        e.  Dismissal of Appeal as to Nauta and de Oliveira ...............11

        f.  The Motions to Intervene...................................................11

        g.  The First Order Denying Intervention and Notice

            of Appeal ..........................................................................13

        h.  The Attorney General's Decision Not to Release

            Voume II ..........................................................................15

**Table of Contents**

**(continued)**

**Page:**

    i.    The Former Defendants' Motion to Permanently Bar Release of Volume II ........................................................ 15

    j.    American Oversight and the Knight Institute's Second Motion to Intervene to Seek a Stay Pending Appeal........... 15

    k.    The February 23 Order Prohibiting Release of Volume II .. 16

    l.    The Second Order Denying Intervention and Notices of Appeals......................................................................... 17

  3.    Standard of Review ............................................................. 17

Summary of the Argument ................................................................. 19

Argument:

I.    There is no statutory right under FOIA, or any other federal statue, to intervene in a criminal case that may affect a FOIA request ......... 21

II.    Volume II of the Special Counsel's report is not a judicial record subject to the common-law right of access ....................................... 28

    a.  Volume II was not submitted in connection with a substantive motion or integral to the judicial resolution of the merits.............. 31

    b.  The Knight Institute and *amici curiae* First Amendment Scholars misinterpret what a substantive motion is and what constitutes the merits ................................................................................ 35

# Table of Contents

## (continued)

**Page:**

III.    Even if Volume II is a judicial record, the district court did not abuse its discretion by denying intervention ....................................... 42

IV.   The district court did not abuse its discretion in denying intervention under the First Amendment, which does not provide a right of access to Volume II beyond what the common law limits to judicial records ............................................................................. 45

V.   This Court lacks jurisdiction to address whether the district court erred in precluding release of Volume II ........................................... 48

   a.   The proposed intervenors cannot appeal any other orders unless they are permitted to intervene........................................ 48

   b.   The notices of appeal specifically mention only the orders denying intervention ................................................................. 50

Conclusion ..................................................................................................... 53

Certificate of Compliance.............................................................................. 55

Certificate of Service..................................................................................... 55

## Table of Citations

**<u>Cases:</u>**                                                                                                                                   **<u>Page:</u>**

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*,

   953 F.3d 707 (11th Cir. 2020) ................................................................ 50

*Belo Broad. Corp. v. Clark*,

   654 F.2d 423 (5th Cir. 1981)................................................................. 45

*Bridgestone/Firestone, Inc.*,

   263 F.3d 1304 (11th Cir. 2001)............................................................. 29

*Burke v. Ocwen Fin. Corp.*,

   No. 21-12160, 2022 WL 599153 (11th Cir. Mar. 1, 2022)......................... 52

*Callahan v. United Network for Organ Sharing*,

   17 F.4th 1356 (11th Cir. 2021)............................................................. 18

*Christian Coal. of Fla., Inc. v. United States*,

   662 F.3d 1182 (11th Cir. 2011)............................................................. 25

*Comm'n v. Texas*,

   605 U.S. 665 (2025) ........................................................................49, 52

*Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*,

   918 F.3d 1161 (11th Cir. 2019)............................................................. 29

*Cooter & Gell v. Hartmarx Corp.*,

   496 U.S. 384 (1990) ........................................................................... 53

## Table of Citations

## (continued)

**Cases:**                                                    **Page:**

*Cox v. Adm'r U.S. Steel & Carnegie,*

  17 F.3d 1386 (11th Cir. 1994)................................................................ 41

*Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush,*

  261 F.3d 1037 (11th Cir. 2001)..........................................................51, 52

*EEOC v. Eastern Airlines, Inc.,*

  736 F.2d 635 (11th Cir. 1984)................................................................ xv

*F.T.C. v. AbbVie Prods. LLC,*

  713 F.3d 54 (11th Cir. 2013).................................................. 29, 32, 39, 43

*Federal Election Commission v. Cruz,*

  596 U.S. 289 (2022) ............................................................................... 39

*Finn v. Cobb Cnty. Bd. of Elections & Registration,*

  111 F.4th 1312 (11th Cir. 2024).............................................................. 49

*Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.,*

  141 F.3d 1032 (11th Cir. 1998)............................................................... 45

*Fox v. Tyson Foods, Inc.,*

  519 F.3d 1298 (11th Cir. 2008)............................................................... 17

## Table of Citations

## (continued)

**Cases:**                                                                    **Page:**

*Globe Newspaper Co. v. Superior Court,*

   457 U.S. 596 (1982) ................................................................. 45

*Griggs v. Provident Consumer Disc. Co.,*

   459 U.S. 56 (1982) ................................................................... 51

*Houchins v. KQED, Inc.,*

   438 U.S. 1 (1978) ..................................................................... 45

*Hyde v. Irish,*

   962 F.3d 1306 (11th Cir. 2020) ................................................ 53

*Immigr. & Naturalization Serv. v. Chadha,*

   462 U.S. 919 (1983) ................................................................. 53

*In re Alexander Grant & Co. Litig.,*

   820 F.2d 352 (11th Cir. 1987) .................................................. 29

*In re Ellingsworth Residential Cmty. Ass'n, Inc.,*

   125 F.4th 1365 (11th Cir. 2025) ............................................... 26

*In re IBM Arb. Agreement Litig.,*

   76 F.4th 74 (2d Cir. 2023) ....................................................... 33

## Table of Citations

## (continued)

**Cases:**                                                                **Page:**

*King v. Cessna Aircraft Co.*,

562 F.3d 1374 (11th Cir. 2009).............................................................18, 44

*LaRouche v. Fed. Bureau of Investigation*,

677 F.2d 256 (2d Cir. 1982)..............................................................26, 27

*Linda R.S. v. Richard D.*,

410 U.S. 614 (1973) ............................................................................. 21

*Mahone v. Ray*,

326 F.3d 1176 (11th Cir. 2003).............................................................. 51

*Marino v. Ortiz*,

484 U.S. 301 (1988) ............................................................................. 49

*Newman v. Graddick*,

696 F.2d 796 (11th Cir. 1983)................................................. 18, 42, 46, 47

*Nixon v. Warner Commc'ns, Inc.*,

435 U.S. 589 (1978) ............................................................................. 18

*Okeelanta Corporation v. United States Army Corps of Engineers*,

132 F.4th 1320 (11th Cir. 2025)............................................................. 39

# Table of Citations

## (continued)

**Cases:**                                                                                                      **Page:**

*PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*,

   65 F.4th 556 (11th Cir. 2023) ................................................................... 43

*Perez v. Owl, Inc.*,

   110 F.4th 1296 (11th Cir. 2024)................................................................. 19

*Perez-Guerrero v. U.S. Atty. Gen.*,

   717 F.3d 1224 (11th Cir. 2013)................................................................. 45

*Piper Aircraft Co. v. Reyno*,

   454 U.S. 235 (1981) ................................................................................. 44

*Polelle v. Florida Secretary of State*,

   131 F.4th 1201 (11th Cir. 2025)................................................................. 39

*Romero v. Drummond Co.*,

   480 F.3d 1234 (11th Cir. 2007)................................................................. 30

*Rtskhiladze v. Mueller*,

   784 F. Supp. 3d 256 (D.D.C. 2025) .......................................................... 40

*Sapuppo v. Allstate Floridian Ins. Co.*,

   739 F.3d 678 (11th Cir. 2014).............................................................12, 14

# Table of Citations

## (continued)

**Cases:**                                                             **Page:**

*Seminole Tribe of Fla. v. Stranburg*,

   799 F.3d 1324 (11th Cir. 2015)................................................................. 50

*Siebert v. Allen*,

   506 F.3d 1047 (11th Cir. 2007)................................................................. 19

*Smith v. Casey*,

   741 F.3d 1236 (11th Cir. 2014)................................................................. 43

*Trump v. Mazars USA, LLP*,

   591 U.S. 848 (2020) ................................................................................ 34

*United Kingdom v. United States*,

   238 F.3d 1312 (11th Cir. 2001)................................................................. 41

*United States v. Alcatel-Lucent France, SA*,

   688 F.3d 1301 (11th Cir. 2012)............................................... 22, 23, 24, 25

*United States v. Aref*,

   533 F.3d 72 (2d Cir. 2008) ..................................................................18, 21

*United States v. Atesiano*,

   No. 18-20479-CR, 2018 WL 5831092 (S.D. Fla. Nov. 7, 2018) . 26, 27, 28, 39

## Table of Citations

## (continued)

**Cases:**                                                   **Page:**

*United States v. Carmichael*,

  342 F. Supp. 2d 1070 (M.D. Ala. 2004)................................................27, 28

*United States v. Couch*,

  906 F.3d 1223 (11th Cir. 2018)................................................ 22, 23, 25, 39

*United States v. Cox*,

  No. 8:14-CR-0140-T-23MAP, 2015 WL 13741738 (M.D. Fla. Oct. 7, 2015)

  ................................................................................................26, 27

*United States v. DiBernardo*,

  775 F.2d 1470 (11th Cir. 1985)................................................................ 53

*United States v. Gurney*,

  558 F.2d 1202 (5th Cir. 1977)................................................................ 26

*United States v. Harris*,

  989 F.3d 908 (11th Cir. 2021)...........................................................18, 44

*United States v. Hastings*,

  695 F.2d 1278 (11th Cir. 1983)................................................................ 45

*United States v. Javat*,

  No. 20-13310, 2022 WL 703940 (11th Cir. Mar. 9, 2022).......................... 23

## Table of Citations

## (continued)

**Cases:**                                                                                     **Page:**

*United States v. Kollintzas,*

  501 F.3d 796 (7th Cir. 2007)....................................................................... 22

*United States v. Mims,*

  167 F.4th 1340 (11th Cir. 2026)................................................................. 53

*United States v. Ochoa-Vasquez,*

  428 F.3d 1015 (11th Cir. 2005)................................................................. 48

*United States v. O'Steen,*

  133 F.4th 1200 (11th Cir. 2025)................................................................ 37

*United States v. Ruan,*

  814 F. App'x 439 (11th Cir. 2020) ............................................................ 17

*United States v. Valenti,*

  987 F.2d 708 (11th Cir. 1993)................................................................... 45

*Weaver v. Fla. Power & Light Co.,*

  172 F.3d 771 (11th Cir. 1999)................................................................... 51

*Wilson v. Am. Motors Corp.,*

  759 F.2d 1568 (11th Cir. 1985)................................................................. 45

## Table of Citations

## (continued)

**Cases:**                                                    **Page:**

*Wisecup v. James*,

   790 F.2d 841 (11th Cir. 1986)................................................................. 53

*Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*,

   929 F.2d 591 (11th Cir. 1991).............................................................49, 50


**Statutes & Other Authorities:**                            **Page:**

5 U.S.C. § 552 ................................................................................. 12, 15, 24

18 U.S.C. § 3231 .......................................................................................... xv

18 U.S.C. § 3771 .......................................................................................... 24

21 U.S.C. § 853 ........................................................................................... 23

31 U.S.C. § 3730 ......................................................................................... 23

Fed. R. App. P. 3 ......................................................................................... 50

Fed. R. App. P. 4 .......................................................................................... xv

Fed. R. App. P. 32 ........................................................................................ 55

Fed. R. Civ. P. 24.......................................................................................... 27

Fed. R. Crim. P. 16 ...................................................................................... 41

Federal Rule of Civil Procedure 24 ............................................................ 23

**Statutes & Other Authorities (cont'd):**                                    **Page:**

Federal Rule of Criminal Procedure 6.....................................................7, 8, 9

Federal Rule of Criminal Procedure 16 ....................................................... 10

28 C.F.R. § 600.8 ..............................................................................4, 31, 40

28 C.F.R. § 600.9 ................................................................................ 5, 40

## Statement of Jurisdiction

This is a consolidated appeal from two non-final orders of the United States District Court for the Southern District of Florida denying motions to intervene in a criminal case. (DE 760; 780). The district court had jurisdiction to enter the orders under 18 U.S.C. § 3231. The proposed intervenors filed timely notices of appeal. (DE 762; 763; 783; 784; 793); *see* Fed. R. App. P. 4(b). Under the "anomalous rule," this Court has "provisional jurisdiction to determine whether the district court erroneously concluded that the appellant was not entitled to intervene." *EEOC v. Eastern Airlines, Inc.*, 736 F.2d 635, 637 (11th Cir. 1984). If this Court concludes that the district court correctly denied intervention, "then [its] jurisdiction evaporates because the proper denial of leave to intervene is not a final decision." *Id.* The Court must then dismiss the appeal "for want of jurisdiction." *Id.*

**Introduction**

This consolidated appeal asks a narrow, unique question: whether third parties can intervene in a closed criminal case to access a volume of a Special Counsel's final report that the district court reviewed *in camera* before deciding whether to preclude its release. American Oversight and the Knight First Amendment Institute at Columbia University sought to intervene below to gain access to Volume II of Special Counsel Jack Smith's final report on his prosecutorial decisions in the underlying case. The proposed intervenors argue that they can intervene under the Freedom of Information Act (FOIA), the common-law right of access to judicial records, and the First Amendment qualified right of access to judicial proceedings. But they are wrong.

The district court did not abuse its discretion in finding that the proposed intervenors did not meet the narrow circumstances in which intervention in a criminal case is permitted. FOIA did not give them an express or implied right to intervene. And neither did the common law nor the First Amendment, as the report was not a judicial record. Judicial records include only those submitted by the parties in connection with a substantive motion and integral to the judicial resolution of the merits. The report was neither, as its release was an issue collateral to the merits of the underlying criminal case.

That the report's disclosure was litigated did not transform it into a judicial

record. If that were so, all requests that district courts suppress the wrongful disclosure of information would be self-sabotaging. There is no appreciable difference between the *in camera* review of the report to decide whether it should be released and the *in camera* review of discovery to resolve a motion to compel. And yet the proposed intervenors' view of the law would subject both to the public right of access, regardless of the harm caused by such disclosures. The law does not support that illogical result.

And, even if the report were a judicial record, the district court was well within its discretion to deny intervention to access it. The district court found that the disclosure would expose non-public discovery material implicating grand jury and privilege concerns and would contravene basic notions of fairness and justice. While the proposed intervenors may disagree, that does not amount to an abuse of discretion.

Finally, this Court should reject the proposed intervenors' attempt to expand this appeal beyond the question of intervention. Nonparties cannot appeal merits orders unless they are allowed to intervene, and the proposed intervenors only appealed the denials of intervention. In any event, the appeal of the first order denying intervention did not divest the district court of jurisdiction to preclude the release of Volume II, as the basis for denying intervention was separate and distinct from the reasons why the district court

2

prohibited release of Volume II.

Because the denial of intervention was proper, the Court should dismiss this appeal for lack of jurisdiction.

## Statement of the Issues

I.    Whether the district court abused its discretion in denying intervention under FOIA, which does not say or imply that requestors may intervene in criminal cases affecting their requests.

II.    Whether Volume II is a judicial record subject to the common-law right of access, when it was not submitted by the parties in connection with a substantive motion or integral to the judicial resolution of the merits of the case.

III.    If Volume II is a judicial record, whether the district court abused its discretion in denying intervention, given its findings that release would disclose non-public discovery material implicating grand jury and privilege concerns and contravene basic notions of fairness and justice.

IV.    Whether the district court abused its discretion in denying intervention under the First Amendment qualified right to observe criminal proceedings on the basis that Volume II is not a judicial record.

V.    Whether this Court lacks jurisdiction to address any issue beyond the intervention question where (1) the district court properly denied intervention, at which point this Court's appellate jurisdiction evaporates, and

(2) appellants' notices of appeal mention only the orders denying intervention.

## Statement of the Case

### 1.     Course of Proceedings and Disposition in the Court Below

In July 2023, Special Counsel Jack Smith brought a superseding indictment against Donald J. Trump, Waltine Nauta, and Carlos de Oliveira, alleging mishandling of classified documents. (DE 85).[1] A year later, the district court dismissed the indictment, finding that the Special Counsel's appointment violated the Appointments Clause of the United States Constitution. (DE 672). The Special Counsel appealed. (DE 673); *United States v. Donald Trump, et al.*, Case No. 24-12311 (11th Cir. 2024). But following the 2024 presidential election, this Court, at the Special Counsel's request, dismissed the appeal as to President-Elect Trump. (DE 677); *Trump*, Case No. 24-12311, DE 81.

In January 2025, the Special Counsel completed a two-volume final report under 28 C.F.R. § 600.8(c)[2] on his prosecutorial decisions. (DE 680). Volume I addressed his investigation and prosecution related to the 2020 presidential election brought in the District of Columbia, and Volume II addressed his

---

[1] Record citations in parentheticals refer to the district court docket below. All others are preceded by the case name and number to which they refer.

[2] "At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c).

investigation and prosecution of this case. (DE 692). The Special Counsel later transmitted the report to the Attorney General, who has the authority under 28 C.F.R. § 600.9(c) to decide[3] whether to publicly release it. (DE 680).

To prevent the Special Counsel from issuing the final report, Nauta and de Oliveira filed emergency motions in the district court and before this Court.[4] (DE 679); *Trump*, Case No. 24-12311, DE 85.[5] The district court denied the motion as to Volume I because it did not mention Nauta or de Oliveira[6] and deferred ruling on Volume II. (DE 697). On January 21, 2025, after briefing, an *in camera* review of Volume II, and a hearing, the district court precluded the release of Volume II pending further court order. (DE 714).

Shortly thereafter, at the government's request, this Court dismissed the

---

[3] "The Attorney General may determine that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions." 28 C.F.R. § 600.9(c).

[4] To allow resolution of the parallel appellate motion, the district court issued a temporary stay, preventing the government from releasing the special report outside the Department of Justice. (DE 682). This Court denied the appellate motion, explaining that appellants could appeal the district court's order on the requested relief. *Trump*, No. 24-12311, DE 100-2. Nauta and de Oliveira sought to extend the district court's stay, but the district court later denied that motion as moot. (DE 689; 704).

[5] President-Elect Trump moved to intervene in the case or to participate as *amicus curiae*. (DE 681). The district court denied the request to intervene but allowed now-President Trump to proceed as *amicus*. (DE 702; 714:2).

[6] The Attorney General later publicly released Volume I. (DE 760:4).

appeal from the dismissal of the indictment as to Nauta and de Oliveira. (DE 716); *Trump*, No. 24-12311, DE 113-2.

In February 2025, American Oversight and the Knight Institute moved to intervene below to vacate the January 21 injunction and compel the release of Volume II. (DE 717; 721). The district court denied the motions. (DE 760). American Oversight and the Knight Institute timely appealed that denial under case no. 25-14507-AA. (DE 762; 763).

In January 2026, the former defendants filed unopposed motions to permanently prohibit the release of Volume II. (DE 772; 774). The next month, American Oversight and the Knight Institute again moved to intervene below, this time "to seek a stay of proceedings pending the Eleventh Circuit's resolution of their appeals. . . ." (DE 775:1). The district court granted President Trump's motion and granted in part Nauta and de Oliveira's motion. (DE 779).[7] And the court denied American Oversight and the Knight Institute's second motion to intervene. (DE 780). American Oversight and the Knight Institute timely appealed that denial under case no. 26-10674-AA. (DE 783; 784; 793).

This Court has since consolidated American Oversight and the Knight Institute's appeals.

---

[7] Nauta and de Oliveira also requested that Volume II be destroyed (DE 774:12), but the district court denied that request (DE 779:15).

**2.      Statement of the Facts**

**a.      Nauta and de Oliveira's Emergency Motion to Preclude Release of the Special Counsel's Report.**

The Special Counsel's final report first arose in the underlying criminal case, months after the district court dismissed the indictment due to the Special Counsel's unconstitutional appointment. (DE 672). After learning that the Special Counsel still intended to issue a final report to the Attorney General, who was likely to release it publicly, Nauta and de Oliveira moved to preclude its release. (DE 679). They argued that releasing the report would threaten the integrity of the ongoing proceedings against them, in violation of Southern District of Florida Local Rule 77.2(a); reveal grand jury materials, in violation of Federal Rule of Criminal Procedure 6(e); and be improper given the Special Counsel's unlawful appointment. (DE 679:8–21).

Nauta and de Oliveira did not attach a copy of the report to their motion or quote from it. (*See id.*). Indeed, before filing, the Special Counsel had allowed their attorneys only a limited in-person review of Volume II over two days. (*Id.* at 5–6, 13–14). Nauta and de Oliveira contended that their "[c]ounsel's limited-access review of the draft Report revealed a one-sided narrative arguing that the Defendants committed the crimes charged in this case." (*Id.* at 7).

The government opposed the requested relief. *Trump*, No. 24-12311,

DE 90.[8] In its opposition, the government confirmed that "[c]ounsel for Nauta and De Oliveira were allowed to review Volume Two. . . ." *Id.*, DE 90:6. And it stated that the Special Counsel had provided the report to the Attorney General, who intended to release Volume I to Congress and the public. *Id.*, DE 90:7. But the government did not attach a copy of the report or quote from it in its opposition. *See id.*, DE 90.

The government argued that Volume I should be released because it did not concern the case against Nauta or de Oliveira and did not contain grand jury materials under Rule 6(e). *Id.*, DE 90:8, 10; (*see also* DE 692 (government's supplemental filing in response to district court order)). But as to Volume II, the government committed not to release it while Nauta and de Oliveira remained defendants. *Id.*, DE 90:1, 7–8. That said, the Attorney General intended to allow the Chairmen and Ranking Members of the House and Senate Judiciary Committees to review a redacted version of Volume II. *Id.*, DE 90:1–2, 8.

### b.  The District Court's Deferred Ruling

The district court denied Nauta and de Oliveira's emergency motion as to Volume I and deferred ruling on the release of Volume II, setting a briefing schedule and a hearing. (DE 697:3–4). Pending that ruling, the district court

---

[8] Because of the district court's temporary stay (DE 682), the government filed its opposition only before this Court (*see* DE 684).

precluded the DOJ from sharing Volume II outside the department. (*Id.* at 4).

Before the hearing, the district court ordered the government to deliver a copy of Volume II to the Court for *in camera* review and to provide opposing counsel with an opportunity to review it upon request. (DE 705). The court also said that "[t]his hearing is a public hearing, but any discussions of specified content in Volume II will be conducted in closed, sealed session to preserve Defendants' fair trial rights and to fully respect protective orders previously entered in this case." (*Id.*).

The government provided the district court with a redacted and an unredacted copy of Volume II. (DE 708:1). The government also arranged for defense counsel to inspect those copies. (*Id.* at 2).

### c.    The Hearing on the Emergency Motion as to Volume II

In January 2025, the district court held a hearing on the release of Volume II. (DE 713). "The hearing was held publicly except for a brief session to discuss specified contents of Volume II with designated counsel." (*Id.*). At the outset, the court noted that there would "be no indication or discussion of the specific contents of Volume II" in open court, and if it was necessary to discuss its content, then the parties "should make that clear to the Court so that we can make arrangements for that closure." (DE 768:6). The court also confirmed that it had "reviewed Volume II itself, which was submitted to me in camera for

9

purposes of adjudicating this motion." (*Id.* at 4).

During the open portions of the hearing, the parties and the district court discussed Volume II in general terms. (*See id.* at 10, 12–16, 34–36, 38–40, 69). Nauta and de Oliveira contended that Volume II contained information subject to the district court's protective order under Federal Rule of Criminal Procedure 16 and grand-jury information under Rule 6(e). (*Id.* at 10, 12–16). Nauta and de Oliveira reiterated that their counsel had only a limited ability to review Volume II. (*Id.* at 15). And the government and the district court discussed whether redactions in Volume II still implicated Rule 6(e) information and whether they disclosed classified or privileged information concerning President-Elect Trump. (*Id.* at 34–36, 38–40, 69).

During a brief portion of the hearing when the parties discussed specific portions of Volume II, the district court sealed the proceedings. (*Id.* at 58–69).

### d.    The January 21 Order Precluding Release of Volume II

On January 21, 2025, the district court granted Nauta and de Oliveira's emergency motion as to Volume II. (DE 714). As the court found, "Volume II includes detailed and voluminous discovery information protected by the Rule 16(d)(1) Protective Order entered in this case" that had not been made public. (*Id.* at 5). Volume II also includes a variety of privileged and non-public information, such as:

10

myriad references to bates-stamped information provided by the Special Counsel in discovery and subject to the protective order, including interview transcripts, search warrant materials, business records, toll records, video footage, various other records obtained pursuant to grand jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding, potential Rule 404(b) evidence, and other non-public information.

(*Id.* at 5–6 (internal citation omitted)).

The district court concluded that there was no valid justification for releasing Volume II to Congress while the criminal case against Nauta and de Oliveira remained ongoing. (*Id.* at 9–13). The court thus precluded the DOJ from releasing the report outside the Department until further court order. (*Id.* at 13).

### e.    Dismissal of Appeal as to Nauta and de Oliveira

On January 29, 2025, the government moved to dismiss the indictment-dismissal appeal against Nauta and de Oliveira, and this Court granted the motion. (DE 716); *Trump*, No. 24-12311, DE 113-2.

### f.    The Motions to Intervene

In February 2025, American Oversight and the Knight Institute moved to intervene in the case to dissolve the January 21 order and force the public release of Volume II. (DE 717; 721).[9] They argued that they had a right to intervene

---

[9] Both also filed petitions for writ of mandamus before this Court. *In re Knight First Amendment Institute at Columbia University*, No. 25-13403 (11th Cir. 2025),

because the January 21 order implicated their rights under FOIA, 5 U.S.C. § 552. (DE 717:6–7; 721:8–9). Both had filed FOIA requests for Volume II. (DE 717:5; 721:7; 740:3). American Oversight had also filed a FOIA action in the U.S. District Court for the District of Columbia. (DE 717:5; 740:4); *American Oversight v. Dep't of Justice*, No. 25-cv-383 (D.D.C. 2025). The requests were denied based on the district court's January 21 order, among other reasons. (DE 721:7–8; 740:4); *American Oversight*, No. 25-cv-383, DE 11.

The Knight Institute also argued for access on two other grounds. [10] (DE 721:11–17). First, it argued that Volume II is a "judicial record" to which the public has a presumptive common-law right of access, and there was no good cause to deny access. (DE 721:11–14). And second, it argued that there is a qualified First Amendment right of access to Volume II, and no compelling interest in keeping it from the public. (DE 721:14–17).

---

DE 1; *In re American Oversight*, No. 25-13400 (11th Cir. 2025), DE 1. This Court dismissed the petitions as moot following the denial of intervention. *In re American Oversight*, No. 25-13400, DE 12-2.

[10] American Oversight did not raise these grounds below but did raise them in its mandamus petition. *See In re American Oversight*, No. 25-13400 (11th Cir. 2025), DE 1:28–32. In its brief, American Oversight relegates these grounds to a footnote. (American Oversight Br. 10 n.3). It has therefore waived those arguments. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

12

The government opposed intervention. (DE 740).[11] As the government explained, there is a general prohibition against third parties intervening in criminal cases, and neither American Oversight nor the Knight Institute fell within the narrow exceptions. (*Id.* at 5–7). Moreover, no authority allowed a third party to intervene in a criminal case to contest an order that may implicate FOIA claims. (*Id.* at 6).

The government also argued that the intervenors had no common-law right to access Volume II because it (1) is not a judicial record, as it was never filed in court, made a part of the public record, or submitted into evidence; (2) contained "investigative and discovery materials" to which the public does not traditionally have access; and (3) was not "integral to judicial resolution of the merits" of the action, *i.e.*, the criminal charges. (*Id.* at 7–11). In addition, the government contended that because Volume II is not a judicial record, it was not available under the First Amendment, either. (*Id.* at 8 n.3).

### g.     The First Order Denying Intervention and Notices of Appeal

On December 22, 2025, the district court denied the proposed intervention. (DE 760). The district court first rejected the proposed intervenors' "theory of FOIA intervention in a criminal case [as] unsupported in law and

---

[11] Nauta, de Oliveira, and President Trump (as *amicus*) also opposed the intervention. (DE 739; 755; 759).

unprecedented in scope." (*Id.* at 13). Although the court recognized that its January 21 order had thwarted the proposed intervenors' FOIA efforts, it concluded that the denials did not "bestow upon them party status to pursue that FOIA interest in this separate criminal forum." (*Id.* at 14).

Next, the district court disagreed with the Knight Institute that Volume II is a judicial record subject to public access under the common law or the First Amendment. (*Id.* at 15–18). The court reasoned that Volume II was not attached to any motion or pleading, admitted into evidence, or filed on the docket. (*Id.* at 15). And the court found that "Volume II contains large swaths of nonpublic discovery information (subject to a protective order) that is unattached to a substantive motion for judicial relief." (*Id.* at 15–16).

Finally, the district court explained that its *in camera* review did not convert Volume II into a judicial record. (*Id.* at 16–17). The court reasoned that since *in camera* review of documents requires "scrupulous protection" against publication, such review could not "transform[] an otherwise non-judicial document into a judicial one" accessible to publication. (*Id.*). Moreover, the judicial-record analysis turned on "how the document was used by the parties— to support an argument before the court—and not whether the court itself used the document to resolve that argument." (*Id.* at 17).

The proposed intervenors timely appealed the denial of their motions to

intervene. (DE 762; 763). The notices of appeal mentioned only the order denying intervention. (DE 762 (appealing "Order Denying Non-Party Motions to Intervene"); 763 (appealing "Order Denying Non-Party Motions to Intervene")).

### h.    The Attorney General's Decision Not to Release Volume II

In January 2026, the government informed the district court that the Attorney General had concluded, under FOIA, that Volume II should not be released because it is an internal deliberative, privileged, and confidential communication. (DE 773:2); *see also* 5 U.S.C. § 552(b)(5).

### i.    The Former Defendants' Motion to Permanently Bar Release of Volume II

In January 2026, President Trump, Nauta, and de Oliveira moved in the district court to permanently bar the release of Volume II. (DE 772; 774). Nauta and de Oliveira also requested that Volume II be destroyed (DE 774:12). The government agreed with the former defendants that Volume II should not be released outside the DOJ. (DE 773:1).

### j.    American Oversight and the Knight Institute's Second Motion to Intervene to Seek a Stay Pending Appeal

In February 2026, American Oversight and the Knight Institute filed a second motion to intervene below to seek a stay pending the appeal of the order denying their first motions to intervene. (DE 775). The proposed intervenors

argued that they had standing to intervene based on the same grounds they raised in their first motion: FOIA and the public right of access under the common law and the First Amendment. (*Id.* at 3–4). They also argued that (1) their notices of appeal divested the district court of jurisdiction as to Volume II, (2) the constitutionality of the Special Counsel's appointment did not affect the right to access Volume II, and (3) the district court lacked authority to destroy Volume II. (*Id.* at 5–10).

     k.    **The February 23 Order Prohibiting Release of Volume II**

On February 23, 2026, the district court granted the former defendants' unopposed motions to prohibit the release of Volume II. (DE 779:14–15). The court found that besides the Special Counsel's unlawful appointment, public release would be improper because it would (1) violate the Rule 16 protective order restricting the dissemination of discovery materials; (2) broadcast grand jury information under Rule 6(e) when complete redactions were not feasible; (3) disclose information implicated by unresolved attorney-client issues; and (4) "contravene basic notions of fairness and justice in the process, where no adjudication of guilt has been reached following initiation of criminal charges." (*Id.* at 9–10). The court also concluded that its supervisory powers allowed it to grant the requested relief. (*Id.* at 14).

**l.    The Second Order Denying Intervention and Notices of Appeals**

The same day, the district court also denied American Oversight and the Knight Institute's motion to intervene. (DE 780). In its order, the district court referred to its rationale for denying the first motions to intervene: that there was "no basis to permit the requested intervention in this criminal action, either on prospective intervenors' unprecedented and unsupported theory of FOIA access or on the flawed assumption that Volume II qualifies as a judicial record triggering the common law or First Amendment right of access." (*Id.* at 1–2).

The proposed intervenors timely appealed the denial of their motion to intervene. (DE 783; 784; 793). The notices of appeal mention only the order denying intervention. (DE 784 (appealing "Order Denying Non-Party Motion to Intervene"); 793 (corrected notice, appealing "Order Denying Non-Party Joint Motion to Intervene to Seek Stay")).

**3.    Standard of Review**

In civil cases, this Court reviews denials of intervention as of right de novo and denials of permissive intervention for abuse of discretion. *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008). However, the Federal Rules of Criminal Procedure provide no mechanism for third parties to intervene in criminal cases. *United States v. Ruan*, 814 F. App'x 439, 442 (11th Cir. 2020). In addition, the decision to grant access to judicial records "is one best left to the

sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Intervention in a criminal case to assert a right of access is therefore discretionary, and denials of motions to intervene are reviewable for abuse of discretion. *See Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) (explaining that "[t]he historic presumption of access to judicial records must be considered in the balance of competing interests" and that "[a] district court's resolution of this balancing task is reviewable for abuse of discretion"); *see also United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (reviewing denial of motion to intervene in a criminal case to assert public's First Amendment right of access to criminal proceeding for abuse of discretion).

This Court reviews de novo the determination of whether a document is a "judicial record" and the decision to unseal documents for abuse of discretion. *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1360 (11th Cir. 2021).

A district court abuses its discretion when it "applies an incorrect legal standard," "follows improper procedures in making the determination," "makes findings of fact that are clearly erroneous," or "commits a clear error of judgment." *United States v. Harris*, 989 F.3d 908, 911–12 (11th Cir. 2021) (citation modified). In making that determination, this Court may not substitute its judgment for the district court's; *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381

18

(11th Cir. 2009), which is to say, this Court "will not reverse the district court even if [it] might have reached a different decision," *Siebert v. Allen*, 506 F.3d 1047, 1049 n.2 (11th Cir. 2007).

This Court reviews de novo its own jurisdiction. *Perez v. Owl, Inc.*, 110 F.4th 1296, 1301 (11th Cir. 2024).

## Summary of the Argument

The district court did not abuse its discretion in denying the Knight Institute's and American Oversight's motions to intervene. Unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not provide a mechanism for intervention in a criminal case. The right to intervene must be present in the statutes governing the criminal proceedings or provided by the common law or the U.S. Constitution. No right exists here.

First, there is no statutory right to intervene. FOIA does not contain an explicit or implicit right to intervene in a criminal case, even when the case affects the FOIA request, and no court has held otherwise. The proposed intervenors point to no other federal statute allowing intervention.

Second, there is no common-law right to intervene. Volume II of the Special Counsel's report was not a "judicial record" subject to the common-law right of access. It was not submitted in connection with a substantive motion, meaning a motion that required judicial resolution of the merits. And it was not

19

integral to the judicial resolution of the merits.

Volume II became an issue only after the district court dismissed the underlying criminal case, and it was only relevant to the question of whether it should be released. That did not trigger a common-law right of access. To hold otherwise would be a poison pill for litigants seeking to prevent the wrongful dissemination of information. And even if Volume II is a judicial record, the district court did not abuse its discretion in denying intervention, given its findings that disclosure would reveal non-public discovery material implicating grand jury and privilege concerns and contravene basic notions of fairness and justice.

Third, there is no constitutional right to intervene. Although there is a qualified constitutional right to access criminal proceedings, that right grants the public the ability to observe those proceedings, not to obtain physical copies of materials submitted to the court. The public has access to such materials only if they are judicial records subject to the common-law right of access. And Volume II is not a judicial record. That conclusion disposes of the access question.

Finally, the proposed intervenors' attempt to expand the scope of this consolidated appeal beyond the question of intervention should be curtailed. This Court lacks jurisdiction to address the merits of the orders precluding

20

release of Volume II for two independent reasons: (1) appellants' notices of appeal specifically mention only the orders denying intervention, and (2) the proposed intervenors, as nonparties, cannot challenge any other district court order unless and until this Court agrees with them that intervention was wrongly denied—it wasn't.

Regardless, the first appeal did not divest the district court of jurisdiction to preclude the release of Volume II. The proposed intervenors' lack of statutory, common-law, or First Amendment grounds to enter this criminal case is separate and distinct from the district court's reasons for ultimately prohibiting the release of Volume II—that it would have contravened its earlier dismissal order, disclosed discovery materials protected by various privileges, and resulted in manifest injustice.

## Argument

### I.    There is no statutory right under FOIA, or any other federal statute, to intervene in a criminal case that may affect a FOIA request.

Generally, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). So, unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure provide no mechanism for third parties to intervene in criminal cases. *Ruan,* 814 F. App'x at 442; *accord Aref*, 533 F.3d at

21

81; *United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007). Absent a mechanism, courts must "analyze the participatory rights of non-parties to criminal proceedings in light of the statutes governing those proceedings." *Ruan*, 814 F. App'x at 442 (holding that the Fair Debt Collection Practices Act (FDCPA) did not authorize nonparty to intervene in criminal case); *see United States v. Couch*, 906 F.3d 1223, 1225 (11th Cir. 2018) (holding that False Claims Act did not permit *qui tam* plaintiff to intervene in criminal forfeiture proceeding); *see also United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1307 (11th Cir. 2012) (holding that the Crime Victims' Rights Act (CVRA) did not permit victim to appeal defendant's sentence).

For example, *Ruan* denied intervention in a criminal case by a defendant's ex-wife who sought to rescind a court order voiding a fraudulent transfer of property. *Ruan*, 814 F. App'x at 442. The defendant had transferred the property to her rather than paying restitution. *Ruan*, 814 F. App'x at 441. The district court denied intervention, and this Court agreed, holding that although the FDCPA, which governed the government's restitution collection efforts, "provides certain procedural protections to co-owners and other persons interested in property the government seeks to levy, it does not provide for intervention by non-parties." *Id.* at 442.

Similarly, *Couch* denied intervention in criminal forfeiture proceedings by

22

a *qui tam* plaintiff who had brought a False Claims Act case against two doctors. 906 F.3d at 1225. Instead of intervening in the *qui tam* action, the government convicted the doctors in a criminal case, in which the district court entered a preliminary forfeiture order. *Id.* at 1226. Seeking the forfeited assets, the *qui tam* plaintiff moved to intervene, arguing that under the False Claims Act, if the government pursues a criminal prosecution, then the *qui tam* plaintiff gains "the same rights in such proceeding as such person would have had if the [*qui tam*] action had continued . . . ." *Id.*; *see* 31 U.S.C. § 3730(c)(5). But this Court disagreed, holding that the criminal forfeiture statutes prohibited intervention except by nonparties with superior interests in the forfeited property or by bona fide purchasers. *Couch*, 906 F.3d at 1228; *see* 21 U.S.C. § 853(k); *see also United States v. Javat*, No. 20-13310, 2022 WL 703940, at *3 (11th Cir. Mar. 9, 2022) (holding that district court properly denied motion to intervene in criminal forfeiture case, "because section 853(n)—and not Federal Rule of Civil Procedure 24—provides the exclusive means for third parties to challenge a criminal forfeiture").

Lastly, in *Alcatel-Lucent*, this Court dismissed an appeal by a crime victim because the CVRA did not explicitly or implicitly allow such intervention. 688 F.3d at 1306. There, a company appealed the denial of its CVRA petition to be declared a victim in a criminal case. *Id.* at 1304. But this Court dismissed the

23

appeal for lack of jurisdiction, explaining that the CVRA limited a crime victim's appellate rights to seeking a writ of mandamus. *Id.* at 1305–06; *see* 18 U.S.C. § 3771. This Court further reasoned that because "[t]he CVRA never uses the word 'intervene,'" it followed "that the statute does not expressly authorize intervention by crime victims," and there was no other "basis for reading an implied right of intervention into the CVRA." *Id.* at 1306.

The same rationale applies here. Under FOIA, if an agency denies a request for records, the requester may file a complaint for injunctive relief in the U.S. district court where "the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552(a)(4)(B). The FOIA court must then "determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions. . . ." *Id.* Indeed, that is the procedure American Oversight followed, *see American Oversight*, No. 25-cv-383 (D.D.C. 2025), and that the Knight Institute skipped.

FOIA does not provide an additional right to intervene in a criminal case pending in a different district court to challenge an order affecting the FOIA request. Neither American Oversight nor the Knight Institute points to any language in FOIA or any other statute that allows or implies such a right—

because no such language exists. FOIA "never uses the word 'intervene,'" and so "it follows that the statute does not expressly authorize intervention by [FOIA requesters]." *Alcatel-Lucent*, 688 F.3d at 1306. And "there is no clear basis for reading an implied right of intervention into [FOIA]." *Id.* There isn't even a broad FOIA provision that could be construed to permit intervention, as in *Couch*. *See* 906 F.3d at 1226. So, while FOIA "provides certain procedural protections to" requesters, "it does not provide for intervention by non-parties." *Ruan*, 814 F. App'x at 442; *see also Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1193 (11th Cir. 2011) (explaining that where Congress provides for express avenues of judicial relief, it intends to exclude other similar avenues).

Neither American Oversight nor the Knight Institute submits any persuasive authority supporting a different conclusion; indeed, American Oversight acknowledges (correctly) that there is no precedent for FOIA serving as the basis for third-party intervention in a criminal proceeding (American Oversight Br. 12–13).[12] The case American Oversight primarily relies on is a

---

[12] American Oversight rebukes the district court for evaluating its intervention efforts through the "limited lens" of precedent—American Oversight asserts that employing such "exacting parameters" would prevent would-be intervenors from succeeding in novel circumstances (American Oversight Br. 12–13). But if American Oversight seeks to use FOIA as the basis for intervention, it must point to statutory language authorizing such intervention, or, at the very least, precedent to that effect, *see infra* at 22. The district court found persuasive the lack of textual and precedential support for the argument that FOIA authorizes intervention in criminal matters. This Court should as well.

25

Fifth Circuit case that did not address interventions in criminal cases to vindicate alleged statutory rights. (American Oversight Br. 14 (citing *United States v. Gurney*, 558 F.2d 1202 (5th Cir. 1977), *abrogated in part by Nixon*, 435 U.S. 589)). *Gurney* addressed, in part, whether the press had standing to levy a First Amendment claim challenging a trial court's ruling denying them access to several exhibits and transcripts, the jury list, and written communications between the judge and the jury. *Id.* at 1206. Although the Fifth Circuit stated the general rule that, for standing purposes, the press must hold an interest "protected or regulated by the statute or constitutional guarantee," *id.*, it did not discuss any statutory interest, making the opinion entirely unhelpful here.[13]

The Knight Institute relies heavily on one out-of-circuit civil case involving intervention under Rule 24(a)(2) and three lower-court opinions that reinforce the limits of intervention in criminal cases. (Knight Institute Br. 24–26 (citing *LaRouche v. Fed. Bureau of Investigation*, 677 F.2d 256 (2d Cir. 1982); *United States v. Atesiano*, No. 18-20479-CR, 2018 WL 5831092 (S.D. Fla. Nov. 7, 2018); *United*

---

[13] American Oversight is incorrect that the district court did not fully consider its second motion to intervene. (American Oversight Supp. Br. 3–4). In denying that motion, the district court reiterated its conclusion that the proposed intervenors lacked a statutory, common-law, or First Amendment basis to intervene. (DE 780:1–2). Also, courts need not "address every argument which a litigant raises," particularly "[w]hen a litigant raises nondispositive, irrelevant, or frivolous issues. . . ." *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 125 F.4th 1365, 1381 (11th Cir. 2025).

*States v. Cox*, No. 8:14-CR-0140-T-23MAP, 2015 WL 13741738 (M.D. Fla. Oct. 7, 2015), *report and recommendation adopted*, 2015 WL 9473949 (M.D. Fla. Dec. 29, 2015); *United States v. Carmichael*, 342 F. Supp. 2d 1070 (M.D. Ala. 2004)).

*LaRouche* is distinguishable because it concerned intervention under Rule 24(a)(2), which explicitly gives the right to intervene in civil cases to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and [is] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). In *LaRouche*, the Second Circuit held that an intervenor who sought FBI tapes through FOIA had met the Rule 24(a)(2) standard to intervene in a civil case that had enjoined their release, reasoning that "her effective remedy, perhaps her only one, is by way of intervention." 677 F.2d at 258. But this seductively broad language has no application in a criminal case, where the criminal procedure rules do not offer a handy vehicle for intervention like Rule 24(a)(2) based on the intervenor's alleged interest in the litigation. *See, e.g.*, *Ruan*, 814 F. App'x at 442.

*Atesiano*, *Carmichael*, and *Cox* reinforce that intervention in criminal cases is highly limited. *See Atesiano*, 2018 WL 5831092, at *2 ("Various courts have observed that the Federal Rules of Criminal Procedure do not provide for third-party intervention in criminal cases."); *Carmichael*, 342 F. Supp. 2d at 1072

27

("Intervention in criminal cases is generally limited to those instances in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case."); *Cox*, 2015 WL 13741738, at *3 ("Intervention in a criminal case is an anomaly."). Indeed, all those cases denied intervention. *See Atesiano*, 2018 WL 5831092, at *4; *Carmichael*, 342 F. Supp. 2d at 1073; *Cox*, 2015 WL 13741738, at *3. So they do not advance the proposed intervenors' positions.

In short, FOIA does not give American Oversight or the Knight Institute a statutory basis to intervene in the underlying criminal case.

## II.    Volume II of the Special Counsel's report is not a judicial record subject to the common-law right of access.

The Supreme Court first recognized a "common-law right of inspection" in *Nixon*. *Nixon*, 435 U.S. at 598. *Nixon* acknowledged that the "relatively few judicial decisions" on point made it difficult to provide a comprehensive definition of the right or to list all the factors to consider when weighing whether access is appropriate. *Id*. at 598–99. However, the Supreme Court did note specific, non-exhaustive examples where courts have correctly denied a right of inspection "to [ensure] that its records are not used to gratify private spite or promote public scandal." *Id.* at 598 (citation modified). As the Supreme Court ultimately explained, "[t]he few cases that have recognized [the common-law

right of inspection] do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599.

In the years since *Nixon*, this Court has provided further guidance as to the scope of this common-law right of access. Preliminarily, the right is limited to "items which may properly be considered public or judicial records. . . ." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Traditional judicial records include "pleadings, docket entries, orders, affidavits or depositions duly filed." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (citation modified). But they do not include, as "[a]n illustrative example," discovery materials, even when filed with discovery motions. *Chicago Trib.*, 263 F.3d at 1311. That is because "discovery is essentially a private process meant to assist trial preparation." *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) (citation modified).

Whether a document becomes a judicial record depends "on the type of filing it accompanied." *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 64 (11th Cir. 2013). Mere filing is not enough to imply a right of access. *Advance Loc. Media*, 918 F.3d at 1167. Rather, "public access is presumed for documents 'filed with pretrial motions that require *judicial resolution of the merits of an action*.'" *Callahan*,

29

17 F.4th at 1363 (quoting *Advance Loc. Media*, 918 F.3d at 1167) (emphasis added). In other words, documents "take on that status once they are filed in connection with a substantive motion." *Id.* at 1362.

Whether a substantive motion is dispositive is irrelevant. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). "Material filed in connection with any substantive pretrial motion, unrelated to discovery," can also become a judicial record. *Id.* Thus, "[a] motion that is presented to the court to invoke its powers or affect its decisions, whether or not characterized as dispositive, is subject to the public right of access." *Id.* (citation modified).

Formal filing is also not required to create a judicial record. *Advance Loc. Media*, 918 F.3d at 1168. Judicial records can include materials that litigants submit to the court if the materials are "integral to the judicial resolution of the merits in any action taken by that court. . . ." *Advance Loc. Media*, 918 F.3d at 1167 (citation modified). For example, in *Advance Local Media*, which involved a constitutional challenge to Alabama's lethal injection protocol, this Court held that the protocol itself was a judicial record, even though it was never formally filed, "because it was submitted to the district court to resolve disputed substantive motions in the litigation, was discussed and analyzed by all parties in evidentiary hearings and arguments, and was unambiguously integral to the court's resolution of the substantive motions in [the inmate's] as-applied

30

challenge to the protocol." *Id.* at 1168.

Finally, what directs the judicial-record determination is how the parties used a document, not how the court did. *Callahan*, 17 F.4th at 1363. Therefore, a document's status is not "dependent upon whether it played a discernible role in the resolution of the case," and the court need not "determine the actual role the document played." *Id.* at 1362 (citation modified).

### a.    Volume II was not submitted in connection with a substantive motion or integral to the judicial resolution of the merits.

Volume II was prepared for the Attorney General of the United States, 28 C.F.R. § 600.8(c), not for use in this criminal case. And as the district court found, Volume II contains discovery materials subject to the district court's protective order and may also include materials protected by the attorney-client privilege and grand jury secrecy rules. (DE 714:5–6; 779:9–10). No party in this criminal case submitted Volume II in connection with a pretrial motion that required resolution of the merits (i.e., a substantive motion), and Volume II was not integral to the resolution of the merits. Therefore, American Oversight and the Knight Institute have no common-law right to access it. *See Callahan*, 17 F.4th at 1361; *Advance Loc. Media*, 918 F.3d at 1167; *Chicago Trib.*, 263 F.3d at 1312.

Volume II only became relevant in this criminal case due to Nauta and de Oliveira's emergency motion to preclude its release. (DE 679). That motion was

31

not "substantive" since it did not "require judicial resolution of the merits." *Chicago Trib.*, 263 F.3d at 1312; *see Callahan*, 17 F.4th at 1362. Nor could it be, as the district court had dismissed the indictment six months earlier. (DE 672). Instead, that motion addressed an issue collateral to the merits: whether the Special Counsel's report should be publicly released following the dismissal due to his unconstitutional appointment. (DE 679).

By contrast, all the substantive motions and pleadings that this Court has held were subject to the common-law right of access directly implicated the merits of those cases. *See Callahan*, 17 F.4th at 1362 (communications attached to merits briefing in support of preliminary injunction); *Advance Loc. Media*, 918 F.3d at 1168 (lethal injection protocol that was "unambiguously integral to the court's resolution of the substantive motions in [inmate's] as-applied challenge to the protocol"); *AbbVie Prods.*, 713 F.3d at 64 ("A complaint and its exhibits, which are integral to the 'judicial resolution of the merits' of any action."); *Romero*, 480 F.3d at 1238–39 (motions to share declarations with U.S. State Department that implicated the defendant's defenses based on the political question doctrine and international comity); *Chicago Trib.*, 263 F.3d at 1312 (discovery filed with motions for summary judgment).

In the same vein, Volume II was not integral to the judicial resolution of the merits, unlike the lethal injection protocol in *Advance Local Media*. There, the

32

protocol submitted to the court was indistinguishable from the merits, as the suit directly challenged that protocol. *Advance Loc. Media*, 918 F.3d at 1163. That was why this Court held it was a judicial record: it was "unambiguously integral to the court's resolution of the substantive motions in [the] as-applied challenge to the protocol." *Id.* at 1168. But the same was not true here, as Volume II was not the subject of the criminal case (*see* DE 85), and the district court had dismissed the criminal indictment (DE 672). Volume II only became relevant when the former defendants moved to challenge its release.

Merely filing a motion to suppress the wrongful disclosure of a document does not trigger a public right of access to the document at issue. *See Chicago Trib.*, 263 F.3d at 1312 (following "refined approach" to differentiate filed motions for public-access purposes). By the same token, a document cannot become a judicial record for right-of-access purposes simply because the question of its release becomes litigated. *See Advance Loc. Media*, 918 F.3d at 1167 (explaining that "mere filing of a document does not transform it into a judicial record"). To hold otherwise would be self-defeating, creating a "legal loophole" that nonparties could exploit to improperly access nonpublic information. *See In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 86 (2d Cir. 2023) (holding that an attorney could not "end-run" a confidentiality agreement regarding arbitral agreements "by filing protected materials and then invoking the presumption of

33

access to judicial documents").

This is true whether the request for nondisclosure is raised in an ancillary motion or a separate action. For instance, in *Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020), President Trump filed two lawsuits challenging Congressional subpoenas for financial information about him, his children, and his businesses. *Id.* at 856. The President's request that the courts resolve a dispute between the branches over the disclosure of information would not permit the public to demand access to the disputed documents, whether or not the courts reviewed them *in camera*. Otherwise, parties such as the President could not seek judicial relief to prevent improper disclosure, effectively undermining valid privileges and protections.

At bottom, the submission of Volume II to resolve the motion to preclude its release was no different from submitting a document to resolve a motion to compel discovery, which would not trigger the right of access. *See Chicago Trib.*, 263 F.3d at 1312–13 (holding that "documents filed in connection with motions to compel discovery are not subject to the common-law right of access"). If a criminal defendant or civil litigant got wind that an adversary was planning to publicly release information—perhaps in violation of a protective order—that it had obtained through discovery, their instinct would be to rush to court to block the release of the offending materials. But under the proposed intervenors'

34

understanding of the law, filing such a motion would convert those materials into judicial records that anyone in the country could now sue to access. So not only is the proposed intervenors' request of this Court unprecedented—as American Oversight all but acknowledges (*see* American Oversight Br. 13)—but their proposed legal rule would put litigants in hopeless positions. The common law of public access has never countenanced such an illogical result, and this Court should not do so here for the first time.

In sum, because no party submitted Volume II in connection with a substantive motion, and Volume II was not integral to the resolution of the merits, there is no common-law right to access it. *See Callahan*, 17 F.4th at 1361; *Advance Loc. Media*, 918 F.3d at 1167; *Chicago Trib.*, 263 F.3d at 1312.

### b. The Knight Institute and *amici curiae* First Amendment Scholars misinterpret what a substantive motion is and what constitutes the merits.

The Knight Institute and *amici curiae* First Amendment Scholars argue that the emergency motion was substantive simply because it did not concern discovery and because it invoked the court's "powers." (Knight Institute Br. 30–31; First Amendment Scholars Br. 13–15). And they maintain that Volume II is a judicial record because it was integral to resolving the merits of the emergency motion itself, rather than the merits of the criminal case. (Knight Institute Br. 30–31; First Amendment Scholars Br. 16–17). But they are wrong in several

respects.

To start, a "substantive motion" is, without question, one that "require[s] judicial resolution of the merits." *See Callahan*, 17 F.4th at 1361–62 (rephrasing the "judicial resolution of the merits" rule in *Chicago Tribune* as holding that discovery materials become judicial records "once they are filed in connection with a substantive motion"). And "merits" means, without doubt, "the merits of an action." *Id.* at 1363 (explaining that "public access is presumed for documents 'filed with pretrial motions that require judicial resolution of the merits of an action'") (quoting *Advance Loc. Media*, 918 F.3d at 1167). It does not mean the merits of just any motion.

*Advance Local Media* does not hold otherwise. In explaining that documents submitted to the court can become judicial records if "integral to the judicial resolution of the merits in any action taken by that court," *Advance Local Media*, 918 F.3d at 1167 (citation modified), this Court did not mean that every motion prompting a judicial action can generate a judicial record. That would undermine this Court's "refined approach" to right-of-access questions. *Chicago Trib.*, 263 F.3d at 1312.

Rather, the motion must still be *substantive*, requiring "judicial resolution of the merits of an action." *See Callahan*, 17 F.4th at 1363 (citation modified). *Advance Local Media* did not move away from that understanding. Quite the

36

opposite, as this Court explained: *Advance Local Media* "entrenches rather than erodes our commitment to the principle that public access is presumed for documents 'filed with pretrial motions that require judicial resolution of the merits *of an action*.'" *Callahan*, 17 F.4th at 1363 (emphasis added) (quoting *Advance Loc. Media*, 918 F.3d at 1167). Indeed, the protocol in *Advance Local Media* represented the very merits of that case. *See id.* at 1163; *see also United States v. O'Steen*, 133 F.4th 1200, 1233 n.4 (11th Cir. 2025) ("language in cases must always be read in light of the facts presented").

Next, *Romero* did not expand the definition of "substantive motions" as those "presented to the court to invoke its powers or affect its decisions." (*See* First Amendment Scholars Br. 13). Under that definition, discovery motions would also be substantive, since they invoke a court's power and may affect its decisions. But that would blur the line between discovery motions and "more substantive motions," the very opposite of the "refined approach" this Court follows. *Chicago Trib.*, 263 F.3d at 1312.

In fact, *Romero* did not define substantive motions at all. The only issue in that case was whether the common-law right of access applied to motions that were not dispositive. *See Romero*, 480 F.3d at 1245. In answering that it did, *Romero* held that the right extended to "any *substantive* pretrial motion, unrelated to discovery," not just any motion unrelated to discovery. *Romero*, 480 F.3d at

37

1245 (emphasis added). When *Romero* next said that "[a] motion that is presented to the court to invoke its powers or affect its decisions, whether or not characterized as dispositive, is subject to the public right of access," *id.* at 1246 (citation modified), it was simply reinforcing that the dispositive nature of a substantive motion is irrelevant.

*Romero* is also readily distinguishable, as the substantive motions there directly implicated the defendant's defenses. In *Romero*, a foreign company sued for hiring paramilitaries to kill and torture union members at Colombian coal mines raised as defenses "the political question doctrine and international comity" and then lobbied the U.S. State Department to intervene in the case. *Id.* at 1238–39. This prompted the district court to ask the State Department, in a letter, whether the case interfered with foreign affairs. *Id.* at 1239. This in turn prompted the plaintiffs to file a motion and two declarations—one from a former Colombian official who had witnessed the violence and one from the attorney who interviewed him—requesting that the declarations be provided to the State Department. *Id.* at 1240. That motion, and the motion for reconsideration that followed, easily qualify as substantive because they directly concerned whether the case would continue or yield as the defendant hoped. By contrast, the emergency motion here concerned an issue collateral to the merits: the release

38

of the Special Counsel's report after the indictment's dismissal. (DE 679).[14]

Moving on, the line the Knight Institute and the First Amendment Scholars draw between Volume II and the motion to preclude its release, on the one hand, and discovery materials submitted with discovery motions, on the other, fades upon close scrutiny. The "bright-line rule exempting discovery materials from the common-law right of access," *AbbVie Prods.*, 713 F.3d at 64, does not mean that *any* motion unrelated to discovery is subject to the common-law right of access. Rather, it is "any *substantive* pretrial motion, unrelated to discovery," that is subject to the right of access. *Romero*, 480 F.3d at 1245 (emphasis added). The motion to preclude the release of Volume II was not

---

[14] Also distinguishable are *Federal Election Commission v. Cruz*, 596 U.S. 289 (2022); *Okeelanta Corporation v. United States Army Corps of Engineers*, 132 F.4th 1320 (11th Cir. 2025); and *Polelle v. Florida Secretary of State*, 131 F.4th 1201 (11th Cir. 2025). (Knight Institute Br. 23). None of those cases dealt with intervention; they instead addressed Article III standing in direct lawsuits. *See Cruz*, 596 U.S. at 313 (holding that senator and campaign committee had standing to challenge threatened enforcement of federal statute); *Okeelanta*, 132 F.4th at 1330–31 (holding that agricultural entities had standing to sue Army Corps of Engineers for violating the Water Resources Development Act); *Polelle*, 131 F.4th at 1229 (holding that voter had standing to sue supervisor of election for constitutional violations). That the Knight Institute and American Oversight may have standing to *request* intervention does not mean intervention should be *granted*. *See Couch*, 906 F.3d at 1226 (holding that although *qui tam* plaintiff had "standing to assert that the alternate-remedy provision gives her a right to intervene in criminal forfeiture proceedings so as to claim an interest in the forfeited property," intervention was barred by the criminal forfeiture statutes); *see also Atesiano*, 2018 WL 5831092, at *4 (denying intervention in criminal case in part because the documents sought were not judicial records).

substantive because it did not require "judicial resolution of the merits of an action." *See Callahan*, 17 F.4th at 1363. It was instead collateral to the merits, akin to a discovery motion seeking to protect against the wrongful disclosure of discovery, which would not trigger the public's right of access. *See Chicago Trib.*, 263 F.3d at 1312–13.

The same rationale that exempts discovery from the public applies here. Like the gathering of discovery, the preparation of a Special Counsel's report is "essentially a private process." *Advance Loc. Media*, 918 F.3d at 1167. It is a "*confidential* report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8 (emphasis added). And its release is left to the Attorney General's discretion. *See* 28 C.F.R. § 600.9(c) (stating that "[t]he Attorney General *may*" release the final report) (emphasis added); *see also Rtskhiladze v. Mueller*, 784 F. Supp. 3d 256, 265 (D.D.C. 2025) (finding that "the Attorney General's decision to release" a Special Counsel report is "committed to agency discretion by law"). Here, the Attorney General has determined that Volume II is privileged and confidential and should not be released to the public. (DE 773:2). The proposed intervenors could not challenge that determination directly; they cannot do so here indirectly.

There is also no meaningful distinction between Volume II and general discovery materials. Not only did Volume II itself contain swaths of discovery

40

and other non-public, protected information (DE 714:5–6), but it is also classic opinion work product. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) ("Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as 'opinion work product.'"). As such, it would generally receive the highest levels of protection from disclosure. *See United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir. 2001) (explaining that "'opinion' work product, such as internal memoranda, that reflects an attorney's mental impressions. . . are almost always protected from disclosure"); *see also* Fed. R. Crim. P. 16(a)(2) (exempting "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case").

Lastly, the Knight Institute and the First Amendment Scholars place too much stock in the district court's *in camera* review of Volume II. (Knight Institute Br. 30–31; First Amendment Scholars Br. 16–17). The role the document played in the decision to preclude its release is of no moment—"what matters is how the document was used by the parties." *Callahan*, 17 F.4th at 1362. As already explained, no party submitted Volume II in connection with any substantive motion. To hold otherwise would be akin to holding that *in camera* review of discovery to resolve a motion to compel transforms that discovery into a judicial

record. That is not the law. *See, e.g.*, *Chicago Trib.*, 263 F.3d at 1312.

For these reasons, the district court correctly concluded that Volume II of the Special Counsel's report was not a judicial record.

## III. Even if Volume II is a judicial record, the district court did not abuse its discretion by denying intervention.

"[T]he right to inspect and copy judicial records is not absolute." *Nixon*, 435 U.S. at 598. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* Moreover, "a judge's exercise of discretion in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to . . . [the] production [of the particular document in question].'" *Chicago Trib.*, 263 F.3d at 1311 (quoting *Nixon*, 435 U.S. at 598). And "[a]s with any other form of access, it may interfere with the administration of justice and hence may have to be curtailed." *Newman*, 696 F.2d at 803. As such, "the decision as to access is one best left to the *sound discretion* of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598 (emphasis added); *see Newman,* 696 F.2d at 803 ("A district court's resolution of this balancing task is reviewable for abuse of discretion.").

Courts evaluate whether good cause exists to prevent access by "balancing

42

the asserted right of access against the other party's interest in keeping the information confidential." *Callahan*, 17 F.4th at 1363 (citation modified). Some of the factors include:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Id.* Courts also look at "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, [and] whether access is likely to promote public understanding of historically significant events." *AbbVie Prods.*, 713 F.3d at 62 (citation modified).

Here, even if Volume II is a judicial record, the district court's reasons for precluding its release would also support the denial of intervention. *PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*, 65 F.4th 556, 562 (11th Cir. 2023) ("[T]his Court may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below.") (citation modified).[15] As the district court found, Volume II contains: (1) "myriad references to bates-

---

[15] Alternatively, the Court should remand the matter for the district court to directly evaluate the good-cause factors. *See Smith v. Casey*, 741 F.3d 1236, 1244 n.7 (11th Cir. 2014) ("With respect to a decision we would review only for an abuse of discretion, we generally decline to substitute our judgment about the matter when the district court has not yet decided it and leave the decision for the district court to make in the first instance.").

stamped information provided by the Special Counsel in discovery and subject to the protective order"; (2) "various other records obtained pursuant to grand jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding"; (3) "potential Rule 404(b) evidence"; and (4) "other non-public information." (DE 714:5–6). Moreover, disclosure "would cause irreparable damage to former defendants" by revealing "still-contested grand jury and privilege concerns" and "contravene basic notions of fairness and justice in the process, where no adjudication of guilt has been reached following initiation of criminal charges." (DE 779:10).

There is no basis to override the district court's "sensitive appreciation of the circumstances" in this unique case. *Chicago Trib.*, 263 F.3d at 1311. The district court's discretion means that it "had a range of choice and that [this Court] cannot reverse just because [it] might have come to a different conclusion had it been [its] call to make." *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021). The proposed intervenors essentially ask this Court to substitute its judgment for that of the district court, a role reversal that is impermissible. *See King*, 562 F.3d at 1381 (explaining that "when applying abuse of discretion review, the Supreme Court has instructed appellate courts not to 'los[e] sight of this rule, and substitute [their] own judgment for that of the District Court.'") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

In short, even if Volume II is a judicial record, the denial of intervention was within the district court's discretion.

**IV.    The district court did not abuse its discretion in denying intervention under the First Amendment, which does not provide a right of access to Volume II beyond what the common law limits to judicial records.**

Generally, "[t]here is no First Amendment right of access to public information." *Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.*, 141 F.3d 1032, 1035 (11th Cir. 1998) (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978)). "The right of the public to access judicial records is grounded in the common-law right of access," *Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013), not the Constitution. At most, the public and the press have a qualified First Amendment right to access criminal proceedings. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982). But that constitutional right simply gives the press and the public "access to observe criminal trials," *United States v. Hastings*, 695 F.2d 1278, 1280 (11th Cir. 1983), and some other proceedings, *United States v. Valenti*, 987 F.2d 708, 712 (11th Cir. 1993) (collecting cases showing that the right extends to preliminary hearings and the selection of jurors). "[T]he Constitution grants neither press nor public the right to physical access to courtroom exhibits." *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir. 1985) (quoting *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 428 (5th Cir. 1981)).

The same holds for documents "submitted to the court" that become "part

of the court proceedings." *Newman*, 696 F.2d at 802 (holding that for "prisoner lists, which were submitted to the court and became part of the court proceedings, there may be no constitutional right to copy"). Such documents are accessible only if they implicate the "common-law right to inspect and copy judicial records." *Id.* at 803; *see Advance Loc. Media*, 918 F.3d at 1166. If a document is not a judicial record, then there is no presumptive access to it. *Chicago Trib.*, 263 F.3d at 1311 (explaining that courts "distinguish between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter").[16]

Here, as discussed, Volume II of the Special Counsel's report was not a judicial record because it was neither submitted in connection with a substantive motion nor integral to the resolution of the case's merits. *See, e.g.*, *Callahan*, 17 F.4th at 1362. It therefore fell beyond the common-law right of access. *See, e.g.*, *Chicago Trib.*, 263 F.3d at 1311. And the First Amendment does not provide the proposed intervenors with greater access to Volume II than what the common law allows. *See Newman*, 696 F.2d at 802; *see also Nixon*, 435 U.S. at 609 ("The

---

[16] Notably, the First Amendment scholars confine their *amici* argument to the common-law right of access. (First Amendment Scholars Br. 9 n.4). The government agrees with them that the common law is "dispositive" of the access issue but disagrees with their legal conclusions.

46

First Amendment generally grants the press no right to information about a trial superior to that of the general public.").

Contrary to what the Knight Institute says, *Newman* did not apply the First Amendment right to "documents submitted to the court in connection with post-trial civil proceedings." (Knight Institute Br. 36). There, where a newspaper publisher appealed the "denial of its petitions to copy certain judicial records and to gain access to hearings in [a] class action concerning unconstitutional overcrowding in Alabama prisons," 696 F.2d at 798, this Court applied the First Amendment to the proceedings and the common law to the judicial records, *see id.* at 801–03. The judicial records were prisoner lists that the district court had ordered the Department of Corrections to submit. *Id.* at 799.

*Newman* held that, under the First Amendment, "civil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement are presumptively open to the press and public," and then extended that access to "post-trial and pretrial proceedings in this case." *Id.* at 801 (citation modified). But "[a]s to the prisoner lists, which were submitted to the court and became part of the court proceedings," this Court observed that "there may be no constitutional right to copy." *Id.* at 802 (citing *Nixon*, 435 U.S. at 608–10). This Court continued that "*Nixon* did, however, recognize a common-law right to inspect and copy judicial records." *Id.* at 803. And then this Court applied the

47

balancing test under the common law that *Nixon* outlined. *Id.*

The Knight Institute's reliance on *United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005) is also misplaced. (Knight Institute Br. 36). The subject of that appeal was "plea colloquies, sentencing memoranda, downward-departure motions, and sentencing hearings" sealed in the criminal case against Ochoa's co-defendant that Ochoa sought to unseal. 428 F.3d at 1023. It did not involve a document submitted to the court for a collateral issue unrelated to the merits.

Finally, the Knight Institute's suggestion that the First Amendment provides access to documents that are not judicial records if they are "submitted to the court in connection with a hearing that is itself subject to that right" (Knight Institute Br. 38) is meritless. By that logic, nonparties could access discovery submitted in connection with discovery hearings, since such hearings are also open proceedings.

In sum, the First Amendment does not confer on the proposed intervenors a right of access to Volume II beyond the common-law right to access judicial records.

## V.    This Court lacks jurisdiction to address whether the district court erred in precluding release of Volume II.

### a.    The proposed intervenors cannot appeal any other orders unless they are permitted to intervene.

"The rule that only parties to a lawsuit, or those that properly become

48

parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *accord Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1316 (11th Cir. 2024). Thus, as the Supreme Court recently explained, frustrated intervenors cannot appeal any final district court order "unless and until the denial of intervention is reversed":

> a nonparty who wishes to appeal from a district court decision ordinarily must seek to intervene in the district court proceeding. If the district court denies that intervention motion, the nonparty may appeal the denial of intervention. But the nonparty may not obtain appellate review of any final order of the district court in the underlying proceeding unless and until the denial of intervention is reversed.

*See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 679 (2025). The practical implication is that a proposed intervenor who was correctly denied intervention cannot invoke appellate jurisdiction over any other order in the case. *See Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 592 (11th Cir. 1991) (declining to address district court's rulings on class decertification and evidentiary matters "because, having concluded that it was proper for the district court to deny intervention, [the Court's] jurisdiction vanishes under this circuit's anomalous jurisdiction rule").

Here, as explained above, the district court properly denied the motions to intervene. Accordingly, the Court should dismiss this appeal for lack of jurisdiction, *Eastern Airlines*, 736 F.2d at 637, and decline to address any other

49

issues raised by the proposed intervenors, *Worlds*, 929 F.2d at 592.

> **b.      The notices of appeal specifically mention only the orders denying intervention.**

Even if the proposed intervenors wished to appeal other orders, they did not do so. Under Federal Rule of Appellate Procedure 3, notices of appeal must "designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Although this Court "must construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 722 (11th Cir. 2020) (citation modified). That is because "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Id.* (citation modified). Consequently, this Court "lacks jurisdiction to consider an appeal of an order not specifically mentioned in the appellant's Notice of Appeal." *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1343 (11th Cir. 2015).

Here, American Oversight's and the Knight Institute's notices of appeal mention only the orders denying their motions to intervene. (DE 762; 763; 783; 784; 793). These denials were not final judgments into which other orders merged. *See* Fed. R. App. P. 3(c)(4). So the proposed intervenors had to specifically designate any orders they wanted appealed. *See Seminole Tribe of Fla.*,

50

799 F.3d at 1343. Because they did not do so, the question of whether the district court erred in precluding the release of Volume II is not an issue here.

To be sure, he proposed intervenors' contention that their first appeal divested the district court of jurisdiction to issue the order precluding the release of Volume II (American Oversight Supp. Br. 4–5; Knight Institute Supp. Br. 5–7) fails to persuade. Although "the filing of a notice of appeal is an event of jurisdictional significance" that "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), the notice of appeal does not "prevent the court from entertaining motions on matters collateral to those at issue on appeal." *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (citation modified). A matter is collateral when it raises questions that are "separate and distinct from the issues raised by the direct appeal," *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999), and resolving those issues does not "affect[] the questions presented on appeal," *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001).

That exception applies here. The district court denied the motions to intervene because the proposed intervenors lacked statutory, common-law, and First Amendment grounds to do so. (DE 760:13–18; 780:1–2). By contrast, the district court precluded the release of Volume II because it would have

51

contravened its earlier dismissal order, disclosed discovery materials protected by various privileges, and resulted in manifest injustice. (DE 779:9–14). The basis for prohibiting release thus presented "collateral matters that are separate and distinct from the questions presented on appeal." *Burke v. Ocwen Fin. Corp.*, No. 21-12160, 2022 WL 599153, at *1 (11th Cir. Mar. 1, 2022) (holding that district court erred in finding that appeal divested it of jurisdiction to entertain motion to intervene to acquire documents). Indeed, even if the district court had declined to permanently bar the release of Volume II, that would not have given the proposed intervenors a basis to intervene. As such, the matter was collateral to the intervention question on appeal. *See Bush*, 261 F.3d at 1064.

The provisional aspect of this Court's jurisdiction also shows that there was no divestiture of jurisdiction. Recall that this Court only has "provisional jurisdiction" to review the denial of intervention. *Eastern Airlines*, 736 F.2d at 637. Moreover, as nonparties, the proposed intervenors could not appeal "any final order of the district court in the underlying proceeding unless and until the denial of intervention is reversed." *Nuclear Regul. Comm'n*, 605 U.S. at 679. It would be nonsensical to allow the proposed intervenors to halt the flow of litigation simply by appealing the denial of their motion to intervene, given that their appeal is provisional and narrow to begin with.[17]

---

[17] Equally meritless is American Oversight's contention that there was no live

In short, the first appeal did not divest the district court of jurisdiction to preclude the release of Volume II, as both raised separate and distinct issues.[18]

## Conclusion

For the foregoing reasons, because the district court was correct in denying the motions to intervene, this Court should dismiss this appeal for want of jurisdiction.

controversy because the prior appeals were dismissed and the parties are not adverse. (American Oversight Supp. Br. 6–8). Again, this concerns the merits of an order not on appeal. Regardless, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *accord Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020) ("In the world of jurisdiction, there's an important distinction between the underlying case or controversy and certain 'collateral' matters."). Moreover, the district court retains ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees," even after a criminal case is closed. *United States v. Mims*, 167 F.4th 1340, 1345 (11th Cir. 2026). Also, "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." *United States v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985). And just because the government "agree[s] with the legal arguments asserted by [an] individual," does not mean that there is no longer a case or controversy. *Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 939 (1983). By that logic, any unopposed motion would deprive the district court of jurisdiction to enter the requested relief.

[18] Alternatively, if the Court concludes that the district court was divested of jurisdiction, that is not an invitation, as the Knight Institute argues, to address the merits of the order precluding release of Volume II. (Knight Institute Supp. Br. 7). Again, the proposed intervenors did not appeal that order, and they cannot until they are permitted to intervene. And as the Knight Institute concedes, the remedy for a *Griggs* violation is to remand with instructions to vacate the order. (Knight Institute Supp. Br. 6); *see Wisecup v. James*, 790 F.2d 841, 842 (11th Cir. 1986).

Respectfully submitted,

Jason A. Reding Quiñones
United States Attorney

By:   */s/ Jorge R. Delgado*
Jorge R. Delgado
Assistant United States Attorney
500 E. Broward Blvd.
Ft. Lauderdale, FL 33394
(954) 660-5954
jorge.delgado2@usdoj.gov

George E. Doty III
Chief, Appellate Division

Of Counsel

54

## Certificate of Compliance

This brief complies with the type-volume limitation of this Court's Order Granting Appellants' Joint Motion to Consolidate Appeals and Modify Briefing Schedule, because this brief contains 12,338 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, 14-point Calisto MT font.

## Certificate of Service

I HEREBY CERTIFY that the foregoing Brief for the United States was filed using CM/ECF on this 13th day of July 2026, and the foregoing brief was served via CM/ECF on all counsel of record.

/s/ *Jorge R. Delgado*
Jorge R. Delgado
Assistant United States Attorney

*ms*

55